ſ    COLE, *vs.* HEBB, Adm'r. *de bonis non* of WM. GUYTHER.
*June* 1835.

In an action of replevin brought by G, as executor of W, to which upon the
death of G, the administrator *de bonis non* of W was made a party, the widow
of W was offered as witness for the plaintiff. She released to the plaintiff
and the distributees of her husband, all claim to any part of the property
replevied. The administrator *de bonis non* released her from any claim he
might have against her for costs, and at the same time deposited in court a
sum of money equal to the costs which had accrued whilst the suit was
conducted by G. The widow was originally entitled to one-third of the
property in dispute. HELD, that she was a competent witness for the
plaintiff.

Where there is evidence legally tending to prove, that the defendant's posses-
sion of personal property or that of his testator or intestate, commenced by
permission of the plaintiff or his testator or intestate, without any absolute
right of property passing to the defendant or those whom he represents, at
the time his or their possession commenced, it is not competent for the
defendant in an action for the recovery of such property, to require the court
to instruct the jury to find the issue joined, upon the plea of limitations, for
the defendant, although more than three years had elapsed prior to the
commencement of the action, unless the jury are also instructed to find, the
knowledge by the plaintiff or his testator or intestate, three years before the
institution of the suit, of an adverse claim of title to such property by the
defendant or those under whom he claims.

Where there was a testator, and an executor, and administrator *de bonis non,*
in succession, the latter being plaintiff in replevin—the defendant in pos-
session relied upon that and an adversary claim as owner for more than
three years, to sustain the plea of limitations. A knowledge of such claim
in the plaintiff, or those represented by him was under the circumstances
essential to the defence. The County court restricted the jury by the form
of their instruction to the knowledge of the testator and administrator *de
bonis non,* not submitting the knowledge of the intermediate representative,
the executor, to the jury, although he had filled that office for more than
three years. This instruction upon appeal was held erroneous.

The fact that the defendant's intestate in the year 1821 had returned the
property in dispute in this cause to the assessors, as his, and that it was
recorded as such—that the same property had *not* been returned to the
assessors, as the property of the plaintiff nor his testator, and that the
defendant had also returned the same, as the property of his intestate, in his
appraisement of his estate to the Orphans' court—the suit being brought in
1833, were *not* considered to be circumstances from which the jury might
infer, that the plaintiff at the time of bringing the suit was aware of the
adversary claim of the defendant. He was neither party nor privy to the
inventory or assessment.

In granting an instruction at the request of the defendant, the court must assume the truth of all the facts of which the plaintiff had offered testimony, legally sufficient to warrant the jury in finding them, which are not inconsistent with the facts, the belief of which by the jury was made the groundwork of the prayer.

An issue is made up of one or many facts according to circumstances; and where the evidence does not establish all the facts either directly or by rational deductions, as where there is a failure of evidence in respect to any one material fact involved in the issue, in such case, the evidence is not legally sufficient to warrant the jury in finding the issue which it is offered to sustain, and it is the duty of the court to instruct them accordingly.

So far as regards the legal sufficiency of evidence, the measure and quantity of proof is a question for the court.

Evidence offered to a jury has a two-fold sufficiency—a sufficiency in law, and a sufficiency in fact—of its sufficiency in law the court when applied to for that purpose are the exclusive judges; its sufficiency in fact is a question exclusively for the jury.

Where an action was brought by an executor, as executor, for property which never had been in his possession, and which when recovered with the damages awarded for its caption and detention, would be assets in his hands, upon his death, the administrator *de bonis non* of his testator is the proper person to make plaintiff for the further prosecution of the suit, according to the provisions of the act of Assembly to prevent the abatement of suits.

The cases of *Davis vs. Davis et al*, 7 *Harr. and Johns*. 36. *Morris vs. Brickley and Caldwell*, 1 *Har. and Gill* 107. *Ferguson vs. Tucker*, 2 *Har. and Gill* 182. *Stocket vs. Watkins, adm'rs*., 2 *Gill and Johns*. 326. *Davis et al, vs. Barney*, 2 *Gill and Johns*. 382, cited, examined and explained, with a view to reconcile a supposed difference in the opinions pronounced in *Davis vs. Davis et al, and Davis et al, vs. Barney*, upon the legal sufficiency of evidence.

APPEAL from *St. Mary's* County court.

This was an action of REPLEVIN, commenced by *George Guyther* as the executor of *Wm. Guyther*, against the appellant *Benjamin G. Cole*, on the first of February 1833, for negroes *Maria* and her issue.

The death of *George Guyther* being suggested, the present appellee, as the *adm'r. d. b. non* of *William*, appeared, and became a party to the suit.

The defendant pleaded property, *non cepit*, and limitations, to which there were issues.

1. At the trial the plaintiff offered as a witness *Ann Guyther*, the widow of *William;* and upon the objection being made, that she had an interest to the extent of one-third in the subject of the suit, the plaintiff filed a release to himself, and the

distributees of the estate, executed by her, of all claim to any part thereof; and also a release by himself of any claim which he might have against the witness, on account of the costs of the action; and at the same time deposited in court, a sum of money equal to the costs which had accrued, whilst the suit was depending in the name of *George Guyther*.

The court then, (*Stephen Ch. J., and Key, A. J.*) admitted the witness as competent, and she gave (as stated in the record) important testimony in support of the plaintiff's case, *the defendant excepted.*

2. In addition to the evidence in the preceding exception, which is made a part of this, the plaintiff gave in evidence by two witnesses, that negro woman *Maria*, originally belonged to *William Guyther*, the plaintiff's testator, and that the other negroes replevied, were the children of said negro woman; that about twenty years past, the defendants intestate married the daughter of said *William Guyther*, and several years thereafter, the said negro *Maria* was sent to the said *John Coles*, in the place of a negro called *Sarah*, (which the witness called loaning negro *Maria* to said *Cole*) that was at *Guyther's*, and belonged to said *Cole*, and the possession so continued until the year 1820, when *William Guyther* died. That soon after, the said *John Cole* sent for negro *Sarah*, and took her home, and negro *Maria* continued in the possession of said *Cole* up to the time of his death which happened in the year 1824 or 1825, and his wife the daughter of said *Guyther*, died in the same year a few months before her husband. The plaintiff also proved, that the said *John Cole* repeatedly said, that the said negro was not his property, and he wished that *Guyther's* executor would take her home, and the last time about two months before his death. The defendant then read in evidence to the jury, the will of *Wm. Guyther*, dated and proved in 1820, (which had been renounced by the widow) by which after directing that his executor (*George Guyther*) should sell his estate real and personal, and that the proceeds should be first applied to the payment of his debts, and that the residue should be kept

together for the support of his wife during her single life; he distributes the surplus after her death, or marriage, equally among his children; with the further provision, that the property he had given his daughter *Elizabeth Cole*, the wife of *John Cole*, should be included in the distribution.

And also read from the inventory of the estate of said *John Cole*, returned in 1826, by his administrator into the Orphan's court of *St. Mary's* county, the item, where the said negro *Maria* was returned and appraised as a part of the property of said *John Cole* by the defendant his administrator. He also read to the jury, the assessment lists of the property of *John Cole*, and also of the property of *William Guyther*, returned to the clerk of the *Levy court* of said county in the year 1821 by the assessor, and signed, one list by said *John Cole*, and one by *Ann Guyther* the widow of said *William Guyther*.

In the list of *Cole's* property, *Maria* the woman in question is mentioned, but she is not included in the list of *Guyther's*.

The defendant also gave evidence by a competent witness, that the said negro woman *Maria*, and her children, had been in the possession of said *Benjamin G. Cole* the defendant, and claimed and used as the property of his intestate, ever since the death of said *John Cole* his intestate. Whereupon the defendant by his counsel, prayed the opinion of the court and their instruction to the jury, that if they should find from the evidence, that *John Cole* the defendant's intestate, or the defendant his administrator, or both, had been in possession of the negroes in controversy and claimed title to them, adverse to the right of said *William Guyther* and his executor, for more than three years, previous to the suing of the original writ in this cause, then the plaintiff was not entitled to recover, under the pleadings and evidence in this cause, but was barred by the statute of limitations; which instruction, and opinion, the court refused to give; but instructed the jury, that if they should find from the evidence, that the defendant or his intestate, had been in possession of the negroes in controversy for more than three years, next before the institution of this suit, claiming title adverse to the plain-

Cole *vs.* Hebb.—1835.

tiff, or his testator, and that said adverse claim of title was known to said plaintiff, or his testator, for three years before the institution of this suit; then the plaintiff was barred by the plea of limitations, otherwise not.

The defendant also prayed the court to instruct the jury, that the facts given in evidence by the defendant, that the negro woman *Maria* was given in by the defendant's intestate in the year 1821, to the assessor for said county as his property, and was returned to the records as such, and also, that the said negro was not assessed in the assessment list returned by said assessor at the same time, as the property of the plaintiff, or his testator, and also that the defendant returned the said negroes, as the property of his intestate, in his appraisement of said estate, to the Orphan's court, if believed by the jury, were *prima facie* proof to the jury, from which they might infer the adverse claim of the defendant and of his intestate, and the knowledge of such claim by plaintiff, or his administrator, which opinion or instruction the court refused to give. The defendant excepted to the several refusals of the court to grant his prayers, and to the instructions given to the jury.

3. Upon the preceding evidence the defendant then prayed the court to *non pros* the action, because the present plaintiff *Hebb* was incompetent to support it, he not having given a *Replevin* bond. He insisted that the suit could only be maintained, if maintainable at all, by *George Guyther*, he having possession of the property in dispute, and having bonded to prosecute the action. But the court refused the application, and the verdict and judgment being for the plaintiff, the record was brought before this court upon the appeal of the defendant.

The cause was argued before ARCHER, DORSEY, and CHAMBERS, Judges.

STONESTREET for the appellant.

1. The release did not restore the competency of *Ann Guyther* as a witness. It is to the appellee, and the distributees of

the estate of her husband, and she being by law, one of those distributees, it is in part to herself, and of course leaves her interested to that extent in the event of the suit.

2. The defendant's first prayer in the second exception ought to have been granted, because unlike the case of *Callis and Tolson*, the property here, was delivered originally to *John Cole*, by way of *exchange*, which from the beginning made his title adverse.

3. Upon the death of *George Guyther*, the suit should have been continued by his representative, and not the representative of his testator. The objection goes to the right of the appellee to carry on the suit at all. It is not founded upon a mere disability arising posteriorly, but upon an original defect in the tile of the party who has obtained the verdict. *Chapman vs. Dixon Adm'r.*, 4 *Harr. and Johns.* 527. *Graham & Parran vs. Harris, Parran & Co.*, 5 *Gill and Johns.* 489.

J. M. S. Causin, for the appellee.

1. *Ann Guyther's* competency as a witness was fully restored by the releases, which are always liberally construed to accomplish the purpose contemplated. It is perfectly manifest here, that the party proposed to divest herself of every thing like an interest in the event of the suit, and the court will so expound the writing as to effectuate that purpose. *Boynton Adm'r. vs. Turner*, 13 *Mass. Rep.* 393. *Woods vs. Williams*, 9 *Johns.* 124. 5 *Jacob. Law Dic.* 430. *Bailey vs. Bailey, et. al.*, 8 *Serg. & Low*, 259. *Bailey vs. Hole*, 14 *Ib.* 449.

2. It is very clear, that the possession of the property was acquired originally by *Cole* by way of loan, and of course not adversarily; and consequently his title never could be ripened into a good one, as against *Guyther*, unless his adversary pretensions were communicated to him. The case is precisely like the case of *Callis and Tolson*, 6 *Gill & Johns.* 80.

The defendant's inventory, and the assessment lists, could be no evidence for the defendant. The first was made by himself, and the second, upon information derived wholly from

4

him.  To admit them would be to allow a party to make evidence for himself.

3. The objection that the appellee could not carry on the suit, came too late, if good at all.  But it is not a valid objection, even if urged in time.   The negroes sought to be recovered in the action, are of the assets of the testator *Wm. Guyther*, and that is the true test in determining the right to sue in the one character or the other.   If recovered, these negroes will constitute a portion of the assets of the appellees testator, and therefore he, and he alone is competent to prosecute the action.   There is no force in the objection to the want of a replevin bond.   There is no act of Assembly requiring such a bond; and in *England*, to whose practice ours conforms, except that here the clerk is substituted for the sheriff in taking the bond, the neglect to give one, does not vitiate the proceedings, though the sheriff may be liable, if he execute the writ without one.   *4 Bac. Abr.* 376 *title replevin* (D) *Twells vs. Colville, Willis Rep.* 376.  2 *Wheat Selw.* 905.

4. But at all events the objection should have been by plea *puis darien continuance.*  1 *Wms. Ex'rs.* 372.   *Yeaton vs. Lynn*, 5 *Peters S. C. Rep.* 231.

DORSEY, Judge delivered the opinion of the court.

We entirely concur with the County court, in overruling the objection to *Ann Guyther's* testimony, which forms the basis of appeal on the first bill of exceptions.   We can discover no weight in the various grounds urged by the appellant, against its admissibility.   We also approve of the courts refusing to grant the appellant's *first* prayer, in his second bill of exceptions.    In granting the prayer the County court must assume the truth of all the facts of which the appellee had offered testimony, *legally sufficient* to *warrant* the jury in finding them, which are not inconsistent with the facts, the belief of which by the jury, was *made* the groundwork of the prayer.   Before the court therefore could gratify the appellant's application, they must admit that *John Cole* the appellant's testator, came into possession of, and held negro *Maria* by

permission of *William Guyther,* the original owner, without any right of property passing to *John Cole* at the time his possession accrued; and that the commencement of *Benjamin G. Cole's* possession was but the continuation of the possession and rights of *John Cole.* Of these facts testimony had been offered, not merely tending in the abstract sense of the term to prove them, but tending to prove them in the sense in which that expression was used by this court, in the case of *Davis and al vs. Barney.* The court there state the general rule to be, " that where there is any legal admissible evidence, tending to prove the issue, the effect of that evidence is solely for the consideration of the jury." The word " tending" as there used was not designed by the court to be understood in its literal or vulgar sense, as contributing, or having a leaning to the proof of the issue; but to be understood according to its legal intendment, viz. as so tending to prove the issue, that a rational common sense intellect might draw from it the conclusion, to which, by its production it was desired to lead the jury. It would be dealing unfairly with the opinion of the court to give to it a literal interpretation, which is at war with the whole current of their antecedent, subsequent, and cotemporaneous decisions, and opinions—with the practice prevailing, from time immemorial, in the courts of justice of *Maryland,* and *Great Britain,* where the same principles of the common law prevail; and with the express declaration of the court, made in the opinion itself, that they by no means mean to shake the authority of "the case of *Davis vs. Davis et al,* 7 *Har. and Johns.* 136—'tis true, that in *Davis and al vs. Barney,* the court say, " when there is no evidence applicable to the issue, or tending to prove any material fact; a total failure of evidence, the court will direct the jury, accordingly; and that we conceive to be the doctrine of *Davis vs. Davis et al ;* "that if there be any evidence tending to the proof of the issue, however weak, it ought to be submitted to the consideration of the jury," and a superficial reader might suppose, that the court meant literally what they have said; but such

could not be the meaning of the court; they did not intend that such an interpretation should be given to what they have said; they used technical, judicial language, not that of common parlance, and the import of their expressions is to be elicited accordingly. They were addressing themselves as it were to the legal profession, not to the community at large. When they say, that " when there is no evidence applicable to the issue" " the court will direct the jury accordingly—they do not mean, no evidence applicable to the establishment, of any one of the many material facts which it may be necessary for the plaintiff to prove to sustain the issue, but they mean no evidence applicable to *all* the facts, essential to be proved, to entitle the plaintiff to a verdict. What they mean by the words, " or tending to prove any material fact," is fully explained by the words immediately following " a total failure of evidence." Judicially speaking, the total failure of evidence, does not mean only, the utter absence of all evidence; but it means also, a failure to offer proof, either positive or inferential to establish one or more of the many facts, the establishment of *all* of which is indispensable to the finding of the issue for the plaintiffs. As for example; an action of general *indebitatus assumpsit*, for goods sold and delivered is at issue, and on trial before a jury; a witness is produced who testifies, that he was present and heard the contract for the sale and delivery of the goods between the plaintiff and defendant; but that the goods were not there, and were subsequently to be delivered at a different time and place; and that of such delivery the witness had no knowledge. No other witness being produced, the defendant prays the court to instruct the jury, that the plaintiff is not entitled to recover. The court will grant the prayer, because in the phraseology of lawyers, and courts of justice, there is a total failure of evidence, or in the language of the court more frequently used on such occasions, " because the evidence offered is not sufficient to entitle the plaintiff to recover." The opinion of the court if literally construed, would deprive the bench of the right of instruction in the case suggested for

illustration. In common parlance there was, according to the general rule laid down by the court in *Davis and al vs. Barney,* " legal, admissible evidence, tending to prove the issue." There was, " evidence applicable to the issue, or tending to prove" a " material fact;" there was not " a total failure of evidence." In *Davis vs. Davis et al,* the Court of Appeals, when consisting of all the judges save one, who having sat in the court below, was constitutionally disqualified to sit in the appellate court decided, that " it is the peculiar province of the court, to determine all questions of law, arising before them, and the undoubted right of the jury to find all matters of fact, when *evidence legally sufficient* for that purpose is submitted to their consideration. And this legal sufficiency is a question of law, of which the court are the exclusive judges. Wherever the testimony, adduced by a plaintiff, is so light and inconclusive, that no rational well-constructed mind can infer from it, the fact which it is offered to establish, it is the duty of the court when applied to for that purpose, to instruct the jury, that there is no evidence before them to warrant their finding the fact thus attempted to be proved. Such is the doctrine, sanctioned by long practice, and judicial determinations, as well in this State as in *Great Britain,* and the expediency, and wisdom of the principle is too obvious to be questioned." Give to the opinion of *Davis and al vs. Barney,* that literal injudicial interpretation, which by some persons is erroneously ascribed to it, and the case of *Davis and Davis,* and the principles of law upon which it was decided, (therein so distinctly and formally asserted) are unequivocally over-ruled. The case of *Davis and Davis* was not even cited by the counsel in *Davis and Barney ;* the principles of the decision were never brought in question ; on the contrary, the arguments of the counsel, on both sides, were in recognition of, and perfect consistency with them. Can it then be supposed, that without any argument upon the subject, without any thing in the case before them calling for such a proceeding, the court would of their mere motion, have over-ruled the case

of *Davis and Davis*, and repudiated its principles, so solemnly adjudicated, and subsequently reiterated and confirmed in repeated decisions of this court. Nay, which were recognized and affirmed, in the opinion in *Stockett vs. Watkins adm'rs.* delivered by this court, if not in the same breath, in the same hour, in which, the opinion in *Davis and Barney* was pronounced. The court also say in *Davis and Barney*, that, "the expressions used in *Davis and Davis* are intended to be applicable to the facts in that case." It must be conceded that upon no other principles than those avowed in it, can the correctness of its decision be for one moment sustained. It was an action instituted by the plaintiffs below, to recover of the defendant, the amount alleged to have been received by him for grain sold, and to which the plaintiffs claimed title under the following circumstances;—on the 18th of February 1819, a sale of the real estate of *John Davis* was made by a trustee, at which the defendant became the purchaser, subject to the following terms, as far as concerned the plaintiffs, viz.; "that the heirs of *John Davis* (who were the plaintiffs in the cause) should be entitled to a proportion of the rent, which was said to be a grain rent, to be calculated from the fall of 1818, when the wheat was seeded, to the day of sale." These terms of sale were proved to the jury, and it was proved by the tenant on the farm, that the rent was a grain rent; that the quantity of wheat sown on the farm at the time of sale was 219 1-2 bushels—that the witness in the summer of 1819 cut, gathered, and secured the crop of wheat, and by the defendant's direction, in the fall of 1819, seeded 187 1-2 bushels of wheat on the farm, that he afterwards at different periods from *September* to the last of *December* 1819, carried and delivered by the defendant's order to *William F. Corbett* of *Appoquinimink* the residue of the wheat; that he sold part of his own wheat to said *Corbett*, at different times; and saw other persons deliver wheat to him; and it was proved by another witness that during the period aforesaid, and for many years before and after, *William F. Corbett* was a merchant and wheat-buyer at *Appoquinimink*. The defendant

then moved the court to instruct the jury, that the evidence offered was not sufficient to maintain the plaintiff's case. And because the court below refused to grant this instruction, this court reversed their decision, and in *Davis and Barney* they reiterate their approval of this reversal; but say, that, "the expressions used in *Davis and Davis* are intended to be applicable to the facts of that case; and so applied, they are not we apprehend, opposed to the principle here asserted, "that if there be any evidence, tending to the proof of the issue, however weak, it ought to be submitted to the consideration of the jury." Give to the courts opinion the erroneous construction placed upon it, by sticking to its letter, instead of regarding it in its legal sense, and it is impossible to sustain for one moment, the point adjudicated in *Davis and Davis*, or any of the principles there so formally recognized as the law of the land. Literally speaking, there was, "evidence applicable to the issue," there was evidence "tending to prove a material fact," there was not "a total failure of evidence," there was "legal, admissible evidence tending to prove the issue." The proof of the terms of sale was "evidence applicable to the issue;" "tending to prove a material fact," and was "legal, admissible evidence tending to prove the issue." Nay, so material was the fact, so admissible and applicable, and such the tendency of the testimony, that it was impossible for the plaintiff to recover but by its production.

As further evidence that the court have been misunderstood, by those who give to their opinion in *Davis and Barney* a literal interpretation, and regard it as impairing the weight of the decision in *Davis and Davis*, or any of the legal principles there recognized; it is necessary that some of the decisions of this court (subsequent to that in *Davis and Davis*) in cases where similar principles were involved, should be adverted to. In one year after the decision in *Davis and Davis*, being at the next succeeding term of our court, the case of *Morris vs. Brickley and Caldwell*, 1 *Harr. and Gill* 107, came up for adjudication, and the sole question for our consideration was, whether there was sufficient evidence produced, to have

required the court to submit the case to the determination of the jury. In the trial below, the defendants "prayed the court to direct the jury, that the evidence produced was not *sufficient* to support the action." Which direction was given to the jury by the only judge of this court, who did not participate in the decision of *Davis and Davis.* Thus we see every judge of the Court of Appeals, and the very same judges too, who decided *Davis and Barney*, recognizing and judicially sanctioning the principle, that it is the province of the court to determine whether the evidence be sufficient to be submitted to the consideration of the jury; or in other words, to determine on the legal sufficiency of evidence. And let it be borne in mind, that this decision of the County court, was made not in conformity to the principles settled in *Davis and Davis*, but before the case of *Davis and Davis* was decided. And what was the decision of this court in *Morris vs. Brickley, and Caldwell?* That the court could only instruct the jury, that the plaintiff was not entitled to recover, where there was no evidence, as is erroneously believed to be the meaning of the court in *Davis and Barney.* Let the opinion speak for itself. It is in these words : " this court have on more occasions than one, determined, that where there is no testimony, or where the testimony offered is so slight and inconclusive, that a rational mind could not draw the conclusions sought to be deduced from it, that it is the unquestionable right of the court, and their imperious duty, when applied to for that purpose, to instruct the jury that the plaintiff is not entitled to recover. Whether the case at bar comes within the operation of this decision, is the question now to be considered, and its determination depends upon the proof offered to the jury, and all the circumstances admissible in argument before them, connected with the controversy, as they appear upon the face of the record." And this court after reciting and collating the evidence, determined that it was such, as a jury might rationally have deemed sufficient to support a verdict for the plaintiff, and consequently reversed the judgment of the County court. Do the court in this case, confine the

power of a court to decide on the sufficiency of evidence to the isolated case, where there is no admissible evidence; as they are erroneously supposed to have done in *Davis and Barney*? Certainly not, but they re-affirm to courts of justice all the powers imputed to them by the principles asserted in *Davis vs. Davis.* At the next term of this court, in June 1828, the case of *Ferguson vs. Tucker*, 2 *Harr. and Gill* 182 was tried ; every judge of the Court of Appeals being upon the bench. The court below having refused to give the instruction prayed, as to the legal sufficiency of the plaintiffs proof, the question was argued. The cases of *Davis vs. Davis and al*, and *Morris vs. Brickley and Caldwell* were brought in review before the court, and recognized, and sustained, without a dissenting voice. Here it was not controverted that there was proof of many material facts in ordinary acceptation, legal admissible evidence, applicable to, and tending to prove the issue; there was not a total failure of evidence. The ground upon which the right to the instruction was urged was, that proof of one material fact had been wholly omitted. Do the court, conceding the omission to prove this essential fact, say, as they are supposed to have done in *Davis vs. Barney* :—the court below had no power to have granted the prayer, because there was, legal admissible evidence, proving a material fact, applicable to the issue, and tending to prove it—there is not a total failure of evidence : not a word of the kind; but they recognize the right of *the* defendant to the instruction prayed, if his objection to the testimony had been well-founded ; and proceed to inquire into its truth. They say, " it is insisted, that the defendants instruction ought to have been given, because the proof of knowledge of the apprenticeship in *Ferguson*, was too light and inconclusive to have been left to the jury to find that fact. This court think otherwise. It is true the facts in evidence fall far short of full or conclusive proof; and we by no means intimate, that we would have drawn from them, the same conclusion which has been found by the jury. But it by no means follows, even if the verdict would not be satisfactory to the minds of

the court, that they would feel themselves authorized to withdraw from the jury the consideration of the facts. This prerogative of the court is never exercised, but in cases where the evidence is so indefinite, and unsatisfactory, that nothing but wild irrational conjecture, or licentious speculation, could induce the jury to pronounce the verdict which is sought at their hands. The testimony here cannot be viewed in that light. The conduct of *Ferguson*, when payment was demanded for the services, and notice given of the apprenticeship of *Holland*, was such as cannot fail to excite strong suspicions, that he knowingly harboured him. Few men, under such circumstances, if the information were new, would have failed to evince some surprise at it; and still more few, would have hesitated to rescue their conduct from censure or suspicion, by asserting their innocence of a fact, the knowledge of which, was necessarily imputed by the demand. When in corroboration of the inferences derivable from the acts of *Ferguson*, we advert to his daily receipt of the newspaper containing the information ascribed to him, we think it would be transcending the powers of the court, and stretching the right of instruction further than it has ever yet been carried in this *State*, to refuse to permit the testimony to be weighed by the jury; whatever may be our opinions as to the result to which their deliberations ought to lead them." In this opinion nothing is decided, not properly arising out of the questions before the court; it was delivered by the entire and unanimous bench, after mature deliberation, full argument, and an examination of all the authorities upon the subject; it affirms in every particular the doctrines of *Davis and Davis*. It unqualifiedly concedes the right of the court to weigh the legal sufficiency of the evidence on every material fact in a cause. Can it then be believed, that when *Davis and al, vs. Barney* was decided, just two years afterwards, without any question arising in the cause requiring such a decision, when none of the principles referred to, were challenged or denied, by the counsel on either side, nor the cases even cited, in which they are embraced, the court nevertheless, designed to over-rule

the cases of *Davis vs. Davis, and al* of *Morris vs. Brickley and Caldwell,* and of *Ferguson vs. Tucker?* But suppose such a belief were within the limits of credulity; can such a design be imputed to the court when we look at the case of *Stockett vs. Watkins adm'r.,* 2 *Gill and Johns.* 326, decided by this court on the very same day, and in the same hour, that *Davis and al vs. Barney* was determined; three out of four of the judges deciding the former case, participating in the decision of the latter, and the same judges by whom the opinions were pronounced sitting in both cases. What was the case of *Stockett and Watkins?* It was an action of *assumpsit* to recover rent, for the use and occupation of a farm, and the hire of certain negroes, which had by *John Stockett* been conveyed by an absolute deed to *Nicholas Watkins,* the appellee's (the plaintiffs' below) intestate. The proof offered by the plaintiffs so far as it is necessary to state it, in reference to the question now under consideration, was, that there had been proceedings in Chancery, between the widow, the devisee of *John Stockett,* and those claiming under her, to try *Nicholas Watkins's* title to the land and negroes in question, and that those proceedings terminated in 1825 by a decree of the Court of Appeals in favour of *Watkins.* That after *John Stockett's* death, *Mrs. Stockett,* his executrix, and sole devisee, continued in possession of the said land and negroes until her death, and that after her death the defendant her executor entered and took possession of the property and hired out the farm to *Nicholas Knighton,* one year, for one thousand pounds of tobacco; that *Mrs. S.* died in 1818, having made her will, which appears to have been proved 31st Oct. 1818. That *James Davidson* was called upon by the defendant *S.* to value the rent of the farm in 1821, and valued it at one thousand lbs. of tobacco, and it was rented accordingly for that sum, by *S.* to *Knighton;* that said *Davidson* in 1825 rented the place from *S.* the defendant at the same price:—and that the defendant told him when he took possession, that the rent must be paid to him or to *Watkins* according to the decision of the cause in the Court of Appeals: that the defendant *S.*

had hired *Sam* one of the negroes to *John Beard* in 1822, and in *October* 1825 *Beard* settled with him for the hire at thirty dollars per annum; that *Beard* objected to the amount, but *S.* replied, " dont ask me to take off the wages, I cannot do it for I have to pay it all away to *Watkins*." That in a subsequent conversation, *Beard* heard *S.* say, that all the rent of the place and hire of the negroes, he *S.* had to pay away, as the case was then decided. The defendant offered in evidence the proceedings in two suits in *Anne Arundel* County court, the one a writ of *replevin* for the negroes sued out by *Watkins* against the widow *S.*, the other an action of *ejectment* by the same against the same, both of which were continued on the docket from *April* term 1818 to *October* term 1822, and then entered " discontinued by consent without costs." The plaintiffs then proved by a competent witness that *Mrs. S.* both before and after said replevin admitted and declared to him that she held and enjoyed the said negroes under the permission and consent of the said *N. Watkins.* The court below thought the evidence such, that it ought to be left to the jury and that they were at liberty to infer the relation of landlord and tenant as existing between "*Watkins* and the defendant *Stockett.*" From this opinion of the County court *Watkins* appealed to the Court of Appeals, which after measuring, weighing, analizing, and combining all the testimony in the cause, as well that adduced by the defendant, as by the plaintiff speaking of the instruction given by the County court say, " it informs the jury, that the evidence as repeated by the plaintiff's prayer is sufficient in law to authorize them to infer the relation of landlord and tenant as existing between the parties, during the possession of the defendant, and that he held the land and negroes under the title of *Watkins* and with his concurrence and permission. Every part of this evidence we have examined carefully, and we cannot perceive in any part of it, nor in the whole considered together the presumptive quality ascribed to it. In a word, it does not appear to us sufficient in law, to justify the inference drawn from it by the County court." The opinion of the court in

this case more fully carries out and sustains the authority of *Davis and Davis* ; more practically asserts and illustrates its principles, than any decision which this court have made upon the subject. But for the correcting, explanatory proof on the part of the defendant, the soundest legal, or unprofessional mind, might have been led to the conclusion that there was a holding by the defendant under the permission of the plaintiff. But the Court of Appeals having weighed and collated all the proof in the cause, and finding its solutions and bearings so clearly sustaining the defence set up by the defendant, that in reason, and sober sense no discreet rational jury could deduce from it the inferences necessary to sustain the plaintiff's right to recover, declared that there was error in the County courts leaving it to the jury to weigh the evidence, and find according to their views of its preponderance, either for plaintiff or defendant; their determination is emphatically expressed as follows; "in a word it does not appear to us *sufficient in law* to justify the inference drawn from it by the County court." Can language more unequivocally express the opinion of the court that the measure and quantity of proof is " a question of law" so far as regards the legal sufficiency of evidence? Can a stronger practical illustration of the principle be found in any case than is furnished in this of *Stockett and Watkins* ? What were the facts leading the minds of the jury to the conclusion that there was a permissive holding by the defendant. He was prosecuting a suit in Chancery against the plaintiff, commenced in 1818, for the establishment of his right to the land and negroes in controversy, and two suits had been simultaneously instituted at law, by the plaintiff to recover the possession of the land and negroes. All these suits were continued until *October* term 1822, when the two suits were discontinued *by consent* without costs. Did the plaintiff thereby intend to abandon all claim to the land, and negroes? No. The pending warmly contested Chancery case incontrovertibly repels any such inference. What motive then could have prompted *Watkins* acting under the advise of his counsel, as he may be supposed

to have done, to abandon the vantage-ground which he occupied ; to dismiss suits indispensably necessary to recover by legal process, the possession of the land and negroes ; and thus subject himself to the plea of limitations in any subsequent suit, which he might institute for the recovery of the negroes, their hire, and the rents and profits of the land. The determination of the Chancery suit, be it remembered, if in the plaintiffs favour, would not decree to him the possession of the land and negroes, or the rents and hire thereof; but would be simply a dismissal of the defendant *Stockett's* bill. Is it then an inference so wild and irrational as to be wholly inadmissible into the chapter of the most remote probabilities to imagine that there might have been, at the time of these "discontinuances by consent" an agreement between the plaintiff and defendant that the plaintiff should not prosecute his suits at law, and wrest from the defendant the immediate possession of the land and negroes ; and that in consideration thereof, he the defendant, upon the termination of the Chancery suit against him, would deliver up the possession of the land and negroes to the plaintiff, and would not render necessary a resort to legal process to obtain it. And going a step farther, and adverting to the proof of the defendant's declaration, made after the discontinuance of the suits at law, and before the final decision of the Chancery suit, that the tenant of the land must pay the rent to him *Stockett*, or to *Watkins* accordingly as the decision of the cause might thereafter be made in the Court of Appeals :—that after the decision of the case he *Stockett* declared "that all rent of the place" and "hire of the negroes" he *S.* had to pay away to *Watkins*, is it not an inference equally within the chapter of most remote probabilities ; one which might have been drawn, from the evidence in the cause by a jury (roaming in the wide field of conjecture or indulging in licentious speculations instead of drawing rational conclusions from the facts in testimony before them) when uncontrolled by the prohibitory instruction which the Court of Appeals determined ought to have been interposed by the County court, that when the suits at law were "*discon-*

Cole *vs.* Hebb.—1835.

*tinued by consent without costs,*" that the plaintiff agreed to
permit the defendant to hold the land and negroes until the
final determination of the Chancery suit ; and that the defend-
ant promised that in the event of its terminating in favour of
the plaintiff, he the defendant would pay him the rents and
hire received for the land and negroes ? This interrogatory is
answered by the fact, that the jury, in the case, did draw the
inference ; did determine that there was a permissive holding
by the defendant. And if the impressions which have gone
abroad as to the decision of *Davis and Barney* were correct,
the jury did but exercise their unquestionable rights ; the
County court were bound to have left the case (as they did
without the instruction prayed for) in the hands of the jury ;
and the Court of Appeals erred in reversing their determination
on the subject. The fact too should not be lost sight of that
three, of the four judges, who sat in *Davis and Barney*, were
three of the four judges, who united in the decision in *Stockett
and Watkins ;* and that the judges who pronounced the opinions
in those cases, participated in the decision of both of them.
The inference is irresistible, that in deciding *Davis and
Barney*, the Court of Appeals could not have intended to
repudiate, impair, or restrict the decision of the court, in *Davis
and Davis*, or any of the principles advanced in it.

Let it not for one moment be supposed that in analyzing
and commenting on the case of *Stockett and Watkins* we
mean to intimate a doubt of the correctness of the courts
opinion, as there given. Nothing is further from our intention.
Our only design was to disabuse the public mind of the error
into which it has fallen, in respect to the character of the
decision in *Davis and Barney ;* and to shew that in *Stockett
and Watkins*, all the principles in *Davis and Davis* had been
sustained by the Court of Appeals ; and practically carried out
to their fullest extent.

The decisions of courts of law, the language they use in
determining on general prayers made to them, that the plain-
tiff is not entitled to recover, or that the evidence offered is
not sufficient to entitle him to a verdict, from the earliest age

of our judicial history down to the present day demonstrate the position, that evidence offered to a jury in the trial of a cause, has a two-fold sufficiency; a sufficiency in law, and a sufficiency in fact. Of its sufficiency in law the court, when applied to for that purpose, are the exclusive judges; its sufficiency in fact is a question exclusively cognizable by the jury. When the court are called on to instruct the jury as to the sufficiency of the evidence offered to sustain the issue, or to establish any particular fact material to its determination; it is the province of the court to determine on " the measure and quantity of proof," it is a question of law, and not of fact. If upon the ordinary principles of human judgment, a rational sane mind could draw from the proof the conclusions sought to be proved by it, then is its legal sufficiency established, and it must be submitted to the jury, who only are the judges of its sufficiency in point of fact. Whether the testimony thus surrendered to their consideration be weak or strong; conclusive or inconclusive; sufficient, or insufficient, to prove the facts or warrant the inferences for the establishment of which it was offered, are questions for the exclusive cogni- zance of the jury. It was in reference to evidence of this character, that the Court of Appeals in *Davis and Barney* assert that " the measure and quantity of proof " is not a question of law. If the courts are incompetent to measure and weigh testimony, how is it that they are almost daily called on to instruct the jury that the evidence offered is not sufficient to entitle the plaintiff to recover? The application to the court is not to instruct the jury that the plaintiff has offered no evidence to sustain the issue on his part, and therefore is not entitled to a verdict; but that the evidence offered is not sufficient for that purpose. It would be a solecism to ask the courts instruction that the evidence is not sufficient where no evidence whatever had been adduced. In such a state of the proof, the interposition of the court is rarely necessary, is seldom invoked: the case is abandoned and neither court or jury are troubled on the subject. But where there is testi- mony offered tending in its literal sense, that is contributing

to prove the issue, but of so light and inconclusive a nature as to be wholly insufficient to be made the basis of a verdict, then, is it unquestionable right and constant practice of the court, when applied to for that purpose, to judge of the measure and quantity of proof, and to instruct the jury that it is insufficient in law to prove the issue before them. Nor is it as has on some occasions been contended, any infringement of that sage axiom of common law, " *ad questiones juris respondent judices, ad questiones facti respondent juratores :*" it is coeval with the institution of the trial by jury ; is the balance wheel of the machine by which their powers are exerted. a check, a safeguard placed around them to prevent the abuse, not the use of their authority. It is in fact, both in practice and theory, the great conservative principle of our jurisprudence, as respects the trial by jury. Constituted as courts of justice are under our political institutions, where all powers, rewards and punishments flow directly or indirectly from the people : all accountability is to them ; there is not the slightest ground for the apprehension, that in the exercise of the power claimed for the court, the salutary rights of the jury will be endangered by judicial encroachments. There is no motive for such conduct on the part of the court, and should error or misconduct be imputable to them in this respect; a corrective is at once applied by an appeal to the collected wisdom of the judiciary of the State.

Neither is this wholesome common law maxim, as to the respective rights of court and jury, more alarmingly infringed upon, by the exercise of the power of instruction as to the legal sufficiency of evidence, than it is by the courts exertion of the undeniable right to set aside verdicts, and grant new trials. In the latter case the court not merely determine on the legal sufficiency of the evidence, but judge of its measure and quantity as regards its sufficiency in fact, and from their decision there is no appeal to a higher or more enlightened tribunal. In the former case the court never withdraw the testimony from the consideration of the jury, but where they would instantaneously set aside any verdict founded on its

6

assumed sufficiency. Where the reason, justice, or policy under such circumstances, of leaving the parties litigant to a continued fruitless controversy before the jury, and subjecting them to an expensive, onerous and unavailable new trial before another jury?

This right of the court to judge of the legal sufficiency of evidence is not only recognized by the cases herein before referred to, but has been sanctioned by this court subsequently to the decision in *Davis and al, vs. Barney,* in the following cases, *viz. The Chesapeake Insurance Co. vs. Allegre's adm'rs.,* 2 *Gill and Johns.* 164. *Harris vs. Oliver,* a case decided on the *Eastern Shore, June term* 1831. *McNulty vs. Cooper,* 3 *Gill and Johns.* 214. *Burch and Mundel vs. State, use of McPherson,* 4 *Gill and Johns.* 444, and *Owings and Piet. vs. Low,* 5 *Gill and Johns.* 134. *Goodhand vs. Benton,* 6 *Gill and Johns.* 481. *Medley vs. Williams and al's. Lessee,* decided at this *term.*

But to return to the County court's refusal to grant the first prayer in the appellant's second bill of exceptions in the case at bar, of which refusal we have expressed our approval, it may be only necessary to state, that if the jury did believe from the evidence, the facts which we stated, the court were bound to admit in granting the instruction prayed, and did also find the truth of the facts, which were made the basis of the prayer; yet according to the authority of the case of *Callis vs. Tolson and al,* 6 *Gill and Johns.* 80, the court could not have granted the prayer, because it did not put to the jury the finding of the fact (indispensable to sustain the plea of limitations) viz. the knowledge, by the testator *William Guyther,* or his executor *George Guyther,* three years before the institution of the suit, of the adverse claim of title by the appellant or his intestate—nor has the appellant, any ground of complaint, at the instruction of the court to the jury, excepting the two last words, "not otherwise," as the rest of the instruction gives to him more than he had any right to ask, viz. that if the holding were adverse to the plaintiff, or if the adverse holding were known to the plaintiff, (the

appellee) for three years before the institution of the suit, then the appellant was entitled to recover. Now the appellees right to claim the negroes never commenced till after the institution of the present suit, and after the revocation of the letters testamentary of *George Guyther*, and consequently, any adverse holding as against the appellee, or any knowledge, which he might have possessed three years or more before the institution of the suit of the adverse claim of the appellant, or his intestate, could not possibly operate to bar his recovery of the negroes in his present representative character. But when the court add to their instruction, the words, " *not otherwise*," they confine the operation of the appellant's rights under his plea, within limits more restricted than the law has prescribed to them. The court instruct the jury that the plea of limitations, forms no bar to the appellee's right of recovery, unless he, or his testator knew, of the adverse claim of title of the appellant, or his intestate, for three years before the institution of the suit. The testator died in 1820, and the writ of replevin issued in 1833. Suppose the adverse claim of title in the appellant, or his intestate, to have commenced, and been known to *George Guyther* the executor, from the death of the testator, till the commencement of the suit, a period of more than twelve years; still under the court's instruction it would have formed no bar to the appellee's right to recover. In this the County court erred; the plea of limitations, under such circumstances being as definitive a bar to the action, as if *George Guyther's* letters testamentary had never been revoked, and he had continued until after its trial, the plaintiff in the suit.

We also concur with the court below, in their refusal of the appellant's second prayer in the second bill of exceptions; the facts upon which it is predicated, not being sufficient in law, to authorize the jury, to impute to *George Guyther* the executor, a knowledge of the existence of any of the facts, from which it was attempted to deduce his knowledge of the adverse claim of the appellant, or his intestate to the negroes in question. He was in no wise, either a party or privy to

the inventory or assessment lists relied on. *Non constat*, that at the date or return of either of them, letters testamentary had been granted to him.

We entirely coincide with the County court, in their refusing to grant the appellants prayer in his third bill of exceptions, and in their instruction, that the appellee was the proper party to prosecute the action, after the revocation of the executor's letters testamentary. The negroes never having been in the executors possession, and being when recovered, with damages awarded for their unjust caption, and detention, assets of the testator in the hands of his executor, the suit was properly brought by *George Guyther* in his representative character. The revocation of his letters divested him of all power further to conduct the suit; and the right to its future prosecution vested in the administrator *de bonis non*, according to the provisions of our acts of Assembly, wisely enacted to prevent the abatement of suits.

We concur with the County court, in their opinions and instructions to the jury in the first and third bills of exceptions, and in their refusal of both the appellant's prayers in the second bill of exceptions, but dissent from their instruction given to the jury, on the first prayer of the appellant's second bill of exceptions, and therefore reverse their judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.