THOMAS CLARKE vs. AARON M. DEDERICK.

*Promissory Notes—Rights of an Endorsee of a note
Overdue, under a note given in Renewal—Prayers
and Instructions to the Jury—Evidence—Province of
Court and Jury.*

The purchaser of a patent-right gave in part payment two promissory
   notes, payable six and twelve months after date.   When the first note
   matured, in March, 1866, it was protested for non-payment; and was
   subsequently, together with the twelve months note, which had not
   matured, assigned to the plaintiff; in May, 1866, the maker of the
   notes was approached by the holder, and at his instance substituted a
   new note for the overdue and dishonored one, making it payable to
   the order of the original payees, refusing the request of the endorsee
   to make it payable to his order, and warning him to have nothing
   to do with it.   The maker informed the endorsee, at the time, that
   he had been swindled in the purchase of the patent right, and that
   he should make the renewal note payable at the same date with the
   twelve months note, which had not matured, so that the controversy
   between himself and the original payees might be settled by one suit;
   in an action on the notes brought by the endorsee against the maker,
   HELD:

1st. That the endorsee of the note overdue took it subject to any equi-
   ties between the makers and the payee, and that he took the renewal
   note with notice of the defence intended to be set up against the claim
   of the payees.

2d. That while there was no evidence to show that the endorsee was not
   a *bonâ fide* holder for value without notice of the twelve months note,
   which had not matured when he got it, still as the notes were sued on
   together, there was error in the Court's instruction to the jury, that
   there was no evidence in the case by which they could infer that when
   the plaintiff took the notes he was aware of any infirmity in the title
   of the payees.

It is for the Court to decide as to the sufficiency in law of the evidence,
   but its sufficiency in fact is for the exclusive cognizance of the jury.

APPEAL from the Superior Court of Baltimore City.
   The facts of the case are stated in the opinion of the
Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*Patrick McLaughlin* and *William Schley*, for the appellant, cited 2 *Greenl. Ev.*, secs. 172, 209 ; 1 *Greenl. Ev.*, secs. 74–79 ; *Shaw vs. Broom,* 4 *Dowling & Ryland,* 730 ; *Smith vs. De Wrintz, Ryan & Moody,* 212 ; *Low vs. Chifney,* 1 *Bing. N. C.,* 269.

*John P. Poe,* for the appellee, cited *Story on Promissory Notes,* secs. 190, 197 ; *Goodman vs. Harvey,* 4 *Adolph & Ellis,* 870, *adopted in Com. & Farms. Nat. Bk. vs. First National Bk.,* 30 *Md.,* 11 ; *Gwynn vs. Lee,* 1 *Md. Ch. Dec.* 448–9 ; *Hopkins vs. Kent,* 17 *Md.,* 120 ; *Benjamin on Sales,* 336.

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellee, as endorsee and holder, against the appellant, as maker of two promissory notes, for $2,500 each, one dated 1st of September, 1865, at twelve months, and the other March 4th, 1866, at six months, both payable to the order of L. & P. K. Dederick, and by them endorsed. The plaintiff rested his case upon the production of the notes, and the admission of the signatures of the maker, and of the payees and endorsers. The defence set up was failure of consideration, and that the plaintiff was not a *bonâ fide* holder for value and without notice. After the testimony was closed, the Court rejected a prayer offered by the defendant, and instructed the jury, at the instance of the plaintiff, " that there is no evidence in the case that the plaintiff, at the time he acquired title to the promissory *notes* in controversy, was aware of any defect or infirmity in the title of L. & P. K. Dederick thereto, and that their *verdict must be for the plaintiff.*"

An instruction like this is in effect a demurrer to the evidence, and though Courts should be cautious in the ex-

ercise of their power to grant it, yet when a proper case for its application arises, there is no power which Courts of justice possess more salutary and conservative in its operation and effect.   It is true, as has been often said, that where testimony is derived from a legal source and is pertinent to the issue, or, in legal language, *tends to prove* the issue, it must be submitted to the jury, though weak and inconclusive in itself, its *sufficiency in fact* being a question for *their* exclusive cognizance.   But the *legal sufficiency* of the evidence adduced to sustain the issue or to establish any particular fact material to its determination, is a question of law and not of fact ; and wherever it is so light and inconclusive that no rational, well-constructed mind can infer from it the fact which it is offered to establish, it is the duty of the Court, when applied to for the purpose, to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proved.   Such has been the uniform language of this Court, and such has been the practice prevailing from time immemorial in the Courts of this State, and of England, where the same principles of the common law prevail.   The application presupposes there has been some testimony offered " tending," in the literal and common acceptation of the term, that is contributing to prove the issue, and the instruction asserts that it is of so slight and inconclusive a nature as to be wholly insufficient to be made the basis of a verdict.   In such case the Court judges of the measure and quantity of proof, and instructs the jury upon its sufficiency in law to prove the issue before them.   The exercise of this power by the Courts, as was said by Judge DORSEY in *Cole vs. Hebb*, 7 *G. & J.*, 41, " is no infringement of the sage axiom of the common law ' *ad questiones juris respondent judices, ad questiones facti respondent juratores ;*' it is coeval with the institution of the trial by jury ; is the balance-wheel of the machine by which their powers are exerted—a check,

a safeguard placed around them to prevent the *abuse* not the *use* of their authority. It is in fact, both in practice and theory, the great conservative principle of our jurisprudence as respects the trial by jury." We have deemed it proper to say this much in view of efforts recently made in this and other cases, to open up again the controversy and discussion which were settled by the elaborate and masterly opinion of Judge DORSEY, in *Cole vs. Hebb.*

The instruction, however, in the present case, is erroneous, not for any want of power in the Court to grant it, but for other reasons, which we shall proceed to show. It refers to *both* the notes sued on, and instructs the jury that their verdict must be for the plaintiff, and it was accordingly so rendered for the amount of both notes. In reference to the note dated the 4th of March, 1866, and payable at six months, it is very clear from the evidence the plaintiff did not occupy a position which would prevent inquiry into its consideration, or preclude the maker from relying upon any defect or infirmity in the title of the payees. The history of the transaction so far as necessary to be stated for the purpose of an opinion on this point, is briefly this: The defendant originally passed *two notes* to the Dedericks for $2,500 each, in part payment for the interest in the patent-right which he had purchased from them. Both notes were dated the 1st of September, 1865, and payable at *six* and *twelve* months respectively. When the six months note, which matured March 4th, 1866, was about to fall due, a proposition was made by the defendant to renew it, which the Dedericks declined, because, as appears from their letters, they had passed it away to a broker, and had used the proceeds, and the necessities of their business were such they had not then the funds to take it up or " redeem it " as expressed in the letters. The note was then *protested*, and the plaintiff *subsequently* took it up, or redeemed it for the

Clarke *vs.* Dederick.

payees. From this it is quite clear the plaintiff became the holder of this original note *after its maturity* and *dishonor.* If his suit had been brought on this original note thus taken after maturity, there is no doubt its consideration would have been open to inquiry, for whilst the rule is firmly settled that neither a partial nor a total failure of consideration nor even fraud between the antecedent parties can be set up as a defence or bar to the title of a *bonâ fide* holder of a note for value, *at or before it becomes due* without any notice of any infirmity therein, or where, having such notice, he yet derives his title *before maturity* from a prior *bonâ fide* holder for value, it is also equally well settled that in *all cases* where a party takes the note even for value *after it has been dishonored or is overdue*, he takes it subject to all the equities which properly attach thereto, between the antecedent parties. *Story on Prom. Notes, secs.* 190, 191, 192; *Annan vs. Houck,* 4 *Gill,* 331; *Renwick vs. Williams,* 2 *Md.,* 356. It is a mistake, therefore, to suppose the plaintiff could derive any aid as to this note from the title of the broker from whom he may have received it after maturity and dishonor.

It further appears from the evidence that being thus the holder of this original six months note, the plaintiff came to Baltimore in May, 1866, and saw the defendant about it. What occurred at this interview is thus detailed by the defendant in his examination in chief: "When the plaintiff called, the defendant asked him whether he would take a house and lot as a compromise, which plaintiff declined to do; plaintiff threatened a suit; defendant told him to sue if he pleased; plaintiff then asked defendant to renew the note; defendant told plaintiff he *was swindled* and had *never received a dollar for his purchase;* plaintiff wanted defendant to renew the note in his, plaintiff's favor, but this defendant *declined* to do, but did agree to renew it for six months *in favor of the Dedericks,* and handed the note *thus drawn* to the plaintiff,

dating it back as of the 4th of March, and at the same time *warned* plaintiff not to have anything to do with the note." On his cross-examination on the same point the defendant said, "When the plaintiff, in May, 1866, called on defendant for a settlement of the note, which had been protested, defendant offered to compromise the *whole matter* with him by giving him in payment a house and lot—the same house and lot which he offered originally instead of the *notes;* defendant told him he could not pay *them* as he had sent $5,000 worth of whiskey south, and had not any returns; defendant does not remember that he asked the plaintiff to extend the note for twelve months, but told plaintiff he would renew the note at six months, so that if there was to be a contest about the matter, the note might fall due about the same time as the other, and the affair could be settled *at one time and with the Dedericks,* the payees of the notes."

The renewal note thus drawn in favor of the original payees and handed to the plaintiff with this explicit notice of the defence intended to be taken, is the six months note sued on, and in view of this evidence it is impossible to say the plaintiff was the holder of this note without notice of any defect or infirmity in the title of the payees. If he had received the original note of which this was a renewal before its maturity, a very different state of case would have been presented, and we presume the Court below must have acted upon the assumption that such was the fact. But having received the original note after maturity, and having taken the renewal note with the notice above stated, the case, so far as this note is concerned, stands as if the suit had been between the original payees and the maker, open to all defences which the latter could have made against them.

But it has been argued that even if the case is to be treated as a suit by the payees themselves, no fraud or failure of consideration has been shown, and the question

Clarke *vs.* Dederick.

of notice is, therefore, entirely immaterial. We purposely abstain from reviewing the testimony on this subject or expressing any opinion upon it further than to decide that upon all the testimony and circumstances in evidence, and the inferences properly deducible in argument therefrom, it is not a case in which the Court would be justified in instructing the jury there was *no evidence* of failure of consideration or of fraud in the transactions which resulted in the giving of the notes. This is a question upon which, under all the circumstances, we think the jury should be permitted to pass their judgment.

In reference to the twelve months note, the plaintiff upon the evidence as it now stands is shown or presumed to have acquired his title to it before maturity, and without notice of any defect or infirmity in the title of the payees. There is certainly no evidence that he did not receive it until after the notice communicated in the interview in May, 1866, and for this reason, without referring to others, the defendant's prayer was properly rejected. If the instruction at the instance of the plaintiff had been confined to this note, there would have been no error in it, but being erroneous for the reasons already stated, the judgment must be reversed and the case again tried.

*Judgment reversed, and procedendo awarded.*