Mr. Justice Hagner
delivered the opinion of the court:
The defendant’s first prayer presents to the court the question whether the advertisement, in itself, was a declaration which was sufficient to bind the defendant as a partner, as to any person who may have dealt with the firm after seeing the advertisement. In our opinion it was legally entitled to no such effect.
It merely stated that “ from the 1st instant ” Beveridge had “ an interest in the establishment,” which, in itself, furnishes no proof that he was to be a member of the firm; since a participation in profits, if the language necessarily implied even that, does not, in itself, constitute the recipient a partner.
In Pollock’s Digest of the Law of Partnership, page 2, it is declared that the nearest approach to a precise definition which has been given by judicial authority in England, is the statenrent that “to constitute a partnership the parties must have agreed to carry on business and share the profits iu common, where ‘profits’ means the excess of returns over outlays.” So far from conveying any such idea, the language of the advertisement would seem to repel it. It simply gives notice that from the date specified Beveridge “ has an interest,” and it contains the further expressions, “ our establishment,” “our business,” “we trust,” “we shall,” “his addi *601 tional aid”; and it is not signed by Beveridge or by the individual members, but with the old firm-name. For these reasons, we think the first prayer of the defendant should have been granted.
In our opinion the second prayer of the defendant correctly embodied the law upon the point involved. Where the party sued in reality was not a partner, he cannot be held answerable to a creditor of the firm, unless it is proved in some satisfactory manner that the plaintiff, at the time the ci’edit was given to the firm, had been induced to believe that the defendant was in fact a partner, by some act or declaration on his part which had come to the plaintiff’s knowledge, and upon the faith of which he gave the credit. This is succinctly stated in note 3 to section 65 of Story on Partnership. See, also, Pollock, p. 23. A person who is not really a partner may by act or declaration untruly, and without authority, represent himself as such to others, and thereby, under some circumstances, expose himself to liability as a member of the firm. (Pollock, 22.) Such act or declaration is known as “holding out” oneself as a partner; and upon the plain principle of houesty, such conduct estops a defendant from after-wards disclaiming the character he has thus voluntarily assumed. But such conduct will not entitle the plaintiff to recover against such a defendant unless it had previously “ been known to the person who seeks to make him liable; otherwise there is no duty towards that person.” (Pollock, pp. 23-4; 1 Taylor on Evidence, sec. 773.) Whatever force, therefore, the advertisement might be supposed to have, if it had previously come to the notice of the plaintiff’s intestate, the prayer properly stated that it could have no such effect unless he had been so apprised of it.
The third prayer raises the question as to the legal value of the proof, that the advertisement “ had been published in 'The National Intelligencer,’ a newspaper published in the city of Washington, and having a large circulation in Washington and its vicinity, three times ”; for there is no other evidence whatever upon the point presented to this court by *602 the exception. There is, therefore, nothing before us to show that the plaintiff’s intestate lived “in Washington or its vicinity,” or that she took the paper, or had the opportunity of seeing the notice; and in the absence of such proof, the mere fact of the publication, in our opinion, was entirely insufficient, in the words of the authorities, “ to lead the jury to conclude ” that she had any knowledge that it had been published at the time of this transaction. The very point has been settled by the authorities here and in England. (2 Taylor, sec. 1479; Boyd v. McCann, 10 Md., 118.)
The bare fact of publication, then, being insufficient to enable the jury to conclude that the notice had come to the knowledge of the plaintiff’s intestate, the defendant had a light to ask that the jury should be instructed that there was a total failure of evidence upon the point. The instruction, as asked, was less favorable to the defendant than he was entitled to claim.
This position is fully sustained by the authorities, and we adopt as our own the language of the Court of Appeals of Maryland. (Clarke v. Dederich, 31 Md., 148.) “ The legal sufficiency of the evidence adduced to sustain the issue, or to establish any particular fact material to its determination, is a question of law and not of fact; and whenever it is so light and conclusive that no rational, well-constructed mind can infer from it the fact which it is offered to establish, it is the duty of the court, when applied to for that purpose, to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proven.”
We therefore reverse the rulings excepted to, and remand the case for a new trial.