WILLIAM F. KAGEL *vs.* MORTIMER C. TOTTEN.

*Prayer as to legal Sufficiency of evidence—Concession as to evidence—Action on promissory note—Non-liability of maker, where his Signature is procured by Fraud, or without the intention to sign a Note, as such.*

In an action by the holder of a promissory note against the person purporting to be the maker, the defendant testified that he had never given the note in suit, nor had ever seen the paper before its production in Court. At this point he was interrupted by his counsel, who admitted that the signature was genuine. The defendant then testified in detail to his having been approached on the day of the date of the note by a person representing himself to be the agent of the persons named as payees, and who solicited him to become their agent; that he finally consented and signed a contract of agency in duplicate; and that he signed no other papers on that day or on any other day, and never signed such a paper as the note in suit, at all, and never saw it before seeing it in Court. On a prayer offered by the plaintiff asserting the legal insufficiency of the defendant's evidence as a defence, it was HELD:

1st. That the prayer necessarily assumed the truth of all the facts offered in evidence by the defendant.

2nd. That a concession of the truth of all the evidence of the one party, lead in logical sequence to an absolute denial of the truth of every antagonistic fact offered in evidence by the opposite party.

3rd. That no matter how the signature was obtained, by the granting of the plaintiff's prayer it was admitted to be true that the paper sued on was never signed by the defendant, and not being his promissory note for the payment of money, it could not be made by the plaintiff the foundation for a successful action; and the Court below was in error in granting the prayer.

4th. That the defendant was not liable on said note if it was not signed by him as a note, nor intended by him to be delivered as such.

5th. That to render the defendant liable on said paper he must have been aware at the time of signing the same, or possessed oppor-

tunities, such as a reasonable cautious man would have exercised, of knowing that he was signing a note for the payment of money, as represented by the paper.

6th. That although the genuine signature of the defendant was subscribed to the paper, he was not liable thereon, if his signature was obtained surreptitiously and by fraud, and with an understanding at the time had with the payees or their agent that he was signing a paper of a different character.

APPEAL from the Circuit Court for Carroll County.

This was an action instituted by the appellee, as holder, against the appellant, as maker of a promissory note. The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the following prayer :

That the defendant has given no legally sufficient proof, from which the jury can find, in this case, that the note sued on was obtained from defendant in any manner sufficient to relieve him from the payment thereof to the plaintiff in this action, with interest from its maturity.

And the defendant offered the eight following prayers:

1. That if the jury find from all the facts and circumstances given in evidence, that the plaintiff is not a *bona fide* holder for value of the note sued on, then their verdict ought to be for the defendant; provided, they find that said note was obtained by fraudulent means and without consideration.

2. That if the jury find that the note sued on, was obtained by the payees therein, or their agent, from the defendant by fraud or fraudulent means used by the agent of said payees, then in order to affect the plaintiff by notice of such fraud, and render the said note invalid in his hands, it is not necessary that the plaintiff should have actual and positive knowledge of such fraud before the delivery and transfer of said note to him, but that it is sufficient notice, if it be such as an ordinarily prudent man usually acts upon in the common affairs of life.

Kagel *vs.* Totten.

3. That if the jury believe from the evidence, that the note in suit was obtained by the payees, or their agent, by fraud practiced on the defendant, or if the circumstances appearing in proof tend to show that the transfer and delivery of said note by the payees to the plaintiff, was for the purpose of thereby gaining advantage over the defendant, then the burden of proof rests upon the plaintiff to show before he can recover, that he purchased said note of payees therein in good faith, without notice or knowledge of such fraud, if the jury so find, before the maturity of said note, and paid a valuable consideration therefor.

4. That if the jury shall find, that the paper sued on in this case, was never delivered by the defendant as a note, then their verdict should be for the defendant.

5. That if the jury shall find, that the paper sued on in this case, was not signed by the defendant as a note, nor intended by him to be delivered as a note, then the plaintiff cannot recover thereon against the defendant in this suit.

6. That before the plaintiff can recover in this suit, on the paper sued on, the jury must be satisfied that the defendant signed said paper, and was aware, at the time of so signing the same, or possessed opportunities, such as a reasonably cautious man would have exercised, of knowing that he was executing a note for the payment of one hundred and fifty dollars, in favor of H. K. White & Co., or bearer, as represented by said paper.

7. That the plaintiff is not entitled to recover on the paper sued on, even though the jury may find that the name of the defendant is appended or subscribed thereto, in his, defendant's own hand-writing; if they further find his said signature was procured thereto surreptitiously, and by fraud, and with an understanding, at the time, had with the payees, or their agent, that he was signing a contract of agency for the sale of washing machines, of which

H. K. White & Co., of St. Louis, Missouri, were the manufacturers and proprietors.

8. That if the jury shall find, that on the 20th day of November, 1879, a certain J. H. Miller came to the house of the defendant, representing himself as the agent of a certain firm or company, in the city of St. Louis, Missouri, of the name of H. K. White & Co., who were manufacturers and proprietors of a style of washing machines, known as the "White Washer;" and that said Miller further represented himself as engaged by said company to obtain agents for the sale of said machines, and that he induced, and the defendant finally agreed to become such agent, and to that end signed the contract offered in evidence, which was retained by him, if the jury so find, and that immediately after his signing said contract, the said Miller began filling in another contract similar in form and printed language to the one so signed by him, as aforesaid, and offered in evidence, and stated to defendant, that he must sign another contract, so he could hand it over to the company, to show his agency, and shall find that the defendant, in intending to sign the last mentioned contract, signed the paper sued on, then the verdict must be for defendant.

The Court (MILLER and HAYDEN, J.,) granted the plaintiff's prayer, and rejected all the prayers of the defendant. The defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before ALVEY, YELLOTT, STONE, and IRVING, J.

*James A. C. Bond,* for the appellant.

*Wm. P. Maulsby,* for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The foundation of this action is a promissory note for $150.00 dated 20th of November, 1879, and payable six

months after date to H. K. White & Co. or bearer. It was made payable at The Union National Bank of Westminster, Maryland.

At the trial of the cause in the Court below, there was an adduction of evidence on the part of the plaintiff tending to prove that the signature was genuine; a competent witness testifying that he had frequently seen the defendant write, and from the knowledge of his chirogaphy thus acquired, believed that his name signed to the note was in his own hand-writing. There was a subsequent admission by this witness, that he had not seen the defendant write during a period of several years. The testimony of the plaintiff revealed the facts that his occupation was that of a broker and dealer in negotiable paper, and that on the 29th of November, 1879, he had purchased the note in question from one Spears in Piedmont, West Virginia, for the sum of $112.50; said Spears being a travelling agent, employed by H. K. White & Co. to sell their paper; and the plaintiff buying a large amount of said paper put in circulation through the medium of this agency. The plaintiff was not acquainted with the signatures of the makers of said notes, and made no inquiry with reference to the consideration for which they were given; nor had he any knowledge of the relations subsisting between the defendant and H. K. White & Co., when the note in question was purchased, but acquired such knowledge at a period subsequent to its maturity.

The defendant, in testifying, declared that he had never given the note to H. K. White and Company; nor had ever seen the paper before its production in Court. At this point his testimony was interrupted by his counsel, who, with commendable candor, admitted that the signature was genuine. In the sequence of the testimony there was a disclosure of the fact that, on the 20th of November, 1879, a total stranger, introducing himself as J. H. Miller, came to the residence of the defendant and, after some

conversation, urged him to undertake an agency for the
sale of certain washing machines, manufactured by H. K.
White and Company, in St. Louis, Missouri.    The defend-
ant at first declined on the ground that being an illiterate
man his deficiency in educational advantages would prove
a serious obstacle to the proper transaction of the business.
He finally yielded to importunities, and a contract of
agency was signed in duplicate ; Miller producing his own
ink, and on the table, which he had covered with other
papers, holding down the sheets on which the defendant
was placing his signature.    One of the duplicates was left
with the defendant and the other retained by Miller.

The defendant proceeding with his testimony stated
that he "signed no other papers besides these two con-
tracts on that day or at any other time ; no other paper
was offered on that day to him to be signed by him ; and
he never signed such a paper as this note at all and never
saw it before seeing it in Court ; did not sign any paper or
put his name to any paper on which were written and
printed the words and figures that appear on the paper
sued on ; never was asked to do it ; and never made or
delivered a note to H. K. White and Company.    He signed
his name but twice on that day and thinks there were
other papers under the contracts when they were signed,
but is not positive.    Did not sign the property certificate
produced in evidence though the name thereto looks like
his hand-writing."

This testimony is corroborated in all its material parts
by that of Mary Kagel, the wife of the defendant, who was
present during the whole transaction.

The testimony being closed the plaintiff offered one and
the defendant eight prayers for instructions.    The Court
rejected the prayers of the defendant and granted the
plantiff's prayer as follows :

" The defendant has given no legally sufficient proof,
from which the jury can find, in this case, that the note

sued on was obtained from the defendant in any manner sufficient to relieve him from the payment thereof to the plaintiff in this action, with interest from its maturity."

To the granting of this instruction, and the rejection of his prayers the defendant has excepted and thus brings the legal questions involved into this Court for adjudication.

The prayer of the plaintiff is based upon the hypothesis that the establishment of the proof referred to would be a mere work of supererogation on the part of the jury, its legal insufficiency being already apparent to the Court. The prayer necessarily assumes the truth of all the facts offered in evidence by the defendant, and declares them to be inadequate to form the foundation for a successful defence to the action. It removes the ground from under the defendant's feet and leaves him nothing to stand upon in the Court. Undoubtedly it is within the province of the Court, when the legal sufficiency of the whole evidence offered by either party to a cause is the question upon which its adjudication is invoked by a prayer for instructions presented by the opposite party, to determine that question, but the whole evidence referred to being thus brought under review the Court can only declare it to be insufficient upon the assumption of its entire verity ; it being the constitutional right of every litigant to have the facts in evidence on which he relies found by a jury, unless they are removed from controversy by an admission of their truth. A prayer like this is in the nature of a demurrer to the evidence. It is a concession of facts and a denial of their legal sufficiency. The information conveyed to the jury is that all the facts offered in evidence by the party, against whom the instruction is operative, are incontrovertibly true, but are wholly insufficient to form a legal basis for a verdict in his favor.

A concession of the truth of all the evidence of the one party leads in logical sequence to an absolute denial of the truth of every antagonistic fact offered in evidence by the

opposite party; that which conflicts with what is true being necessarily false. In this connection another controlling principle is brought under consideration. As in conformity with the legal axiom, recognized and acted upon since the first institution of the trial by jury, *ad questiones juris respondent judices, ad questiones facti respondent juratores,* the Court is the exclusive judge of the legal sufficiency of the evidence, and the jury of its weight and sufficiency as proof in support of either side of an issue, if there is any evidence from which a conclusion can be properly deduced, tending to establish the foundation for a verdict, the Court transcends its assigned limits, when by its instruction it informs the jury that there has been a total failure of proof on the part of the litigant offering such evidence, and that they must find for his adversary in the cause. It is within the province of the jury, not only to determine upon the weight of the evidence as proof, but also upon the question of credibility. Having the witnesses under their observation, and closely scrutinizing their demeanor in testifying, they may, properly, reject the whole mass of testimony offered on the one side as utterly worthless, and give exclusive credit to a few facts adduced in evidence on the other. This line of demarcation between the province of the Court and the jury has been clearly drawn by a multitude of decisions. The citation of a few of the leading cases is all that is necessary. *Cole vs. Hebb,* 7 *G. & J.,* 20; *Clarke vs. Dederich,* 31 *Md.,* 148.

An application of these principles leads to important conclusions in the determination of this cause. The prayer of the plaintiff having been granted upon the assumption that the defendant's evidence is true, and all the conflicting evidence of the plaintiff false, the defendant never signed the note upon which suit has been brought and a recovery sought in this action. This fact might not have been found by an intelligent jury irreconcilable with

the candid concession of his counsel. It is wholly impossible for Courts to know what theories may grow out of a mass of evidence, when juries have it before them in the privacy of consultation. No matter how the signature was obtained, by the granting of the plaintiff's prayer, it is admitted to be true that the paper sued on was never signed by the defendant, and not being his promissory note for the payment of money, it cannot be made, by the plaintiff, the foundation for a successful action.

There was error, not only in the granting of the plaintiff's prayer, but in the rejection of the defendant's fourth, fifth, sixth, seventh and eighth prayers, which are in consonance with the principles enunciated in the recent case of *Totten vs. Bucy*, in 57 *Md.*, 446; which case so closely resembles the one now under consideration, that the failure of identity is barely perceptible.

The judgment appealed from will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial ordered.*

(Decided 1st March, 1883.)