WM. P. HANSON, Appellant, v. WM. A. HUNTER *et al.*, Appellees.

1. **Municipal Corporations:** ORDINANCES: VALIDITY: INJUNCTION: RIGHT OF ACTION. A resident taxpayer of a city is entitled to maintain an action to have declared void a city ordinance, and contracts made thereunder, whereby the city is bound to pay rentals for electric street lights out of the general fund, instead of by special assessment upon the property benefited thereby.

2. ———: ———: LEGISLATION ON MORE THAN ONE SUBJECT. An ordinance of a city granting to one the right to place poles and wires in the streets and alleys of the city, to transmit electricity for electric lights and power, and further, "to conduct in pipes underground, to the electric light plant, water from the artesian well" in said city, is not void upon the ground of containing more than one subject, within the meaning of section 489 of the Code.

3. ———: ———: ELECTRIC LIGHT WORKS: APPROVAL AT ELECTION NECESSARY. An ordinance granting to one the right to erect poles and wires in the streets and alleys of a city for the lighting of streets, and the transmission of electricity to private consumers, without the approval of the erection of such plant by the voters of the city at a general or special election, as provided by section 471 of the Code, as amended by chapter 11 of Acts of the Twenty-second General Assembly, is invalid.

4. ———: ———: ———. The restriction imposed by section 471 of the Code, as amended by chapter 11 of Acts of the Twenty-second General Assembly, upon the powers of cities in the grant of franchises for the establishment of waterworks and gas works is applicable as well to ordinances for the erection of electric light plants.

*Appeal from Benton District Court.*—HON. L. G. KINNE, Judge.

JUNE 1, 1891.

THE plaintiff, a resident taxpayer of the defendant city, brings this action to declare the revised ordinance number 21 of said city, and two written contracts made thereunder, between the city and William A. Hunter, null and void, and to enjoin the allowance or payment of any bills for the rent of electric lights out of the general fund of the city under said ordinance and contracts. The defendants demurred upon the grounds:

"*First.* Because said petition does not state facts sufficient to constitute a cause of action. *Second.* Because the plaintiff does not appear by said petition to be entitled to bring or maintain this suit. *Third.* Because the facts set forth in said petition do not entitle the plaintiff to the relief demanded, or to any relief whatever." This demurrer was sustained, and the plaintiff electing to stand on his petition, judgment was entered dismissing the same. The plaintiff appeals.—*Reversed.*

*J. J. Mosnat,* for appellant.

*Geo. C. Scrimgeour, Thomas H. Milner, Gilchrist & Whipple* and *Smith, Rumple & Lake,* for appellees.

GIVEN, J.—I. We first inquire as to the plaintiff's right to maintain this action. It is contended that the

1. MUNICIPAL corporations: ordinances: validity: injunction: right of action.

petition fails to show any injury to him. It shows that he is a taxpayer on property in the defendant city; that under the ordinance and contracts set out the city is bound to pay rentals for electric street lights out of the general fund, instead of by special levy on the property benefited. *Searle v. Abraham*, 73 Iowa, 507, is cited in support of the demurrer. In that case a taxpayer sought to enjoin the city from making a second contract for lighting the streets on the ground that it had a contract with another company in full force. The defendant denied that there was any other contract in force. It was held that it was only a party to the other contract who could assert any rights under it, and until so asserted the taxpayer was not injured. In this case rights are asserted under the ordinance and contract complained of. This ordinance and contract must stand or fall together. If valid, their enforcement would be a direct injury to the plaintiff, to the extent that his taxes would be increased thereby. *Dodge v. City of Council Bluffs*, 57 Iowa, 560, is also cited. In that case the ordinance provided that, if the special tax authorized by law was insufficient to pay the water rentals, the deficit should be paid out of the current annual revenues. The court says: "It is not certain there will be any deficit to be made good out of the general revenue. This action, so far as this point is concerned, is brought upon a mere contingency. Courts of equity lend themselves to prevent injuries which are imminent, not merely possible." No such contingency arises in this case, as the rentals are directly and exclusively payable out of the general fund, and the petition shows that such rentals have accrued, and, unless enjoined, will be so paid. *Gas Co. v. City of Des Moines*, 44 Iowa, 505, is also cited. In that case the plaintiff company sought to enjoin the city from passing an ordinance conferring a franchise

upon another gas company, on the grounds that an exclusive privilege had been given to the plaintiff. It was held that, as the city had power to legislate on that subject, the court could not interfere to prevent enactments. We think the petition shows such injury to the plaintiff as entitles him to maintain this action, if the grounds thereof are well founded.

II. We next inquire whether the matters alleged show the ordinance to be void, either as containing more

2. ——: ——: legislation on more than one subject. than one subject, as provided in section 489 of the Code, or as being passed without being approved by a majority of the voters of the city at a general or special election, as provided in section 471 of the Code. The ordinance grants to William A. Hunter, his successors and assigns, the right to place poles and wires in the streets and alleys, "to transmit electricity for electric lights and power, and the free use thereof, with the right to conduct in pipes under ground, to the electric light plant, the water from the artesian well now flowing at the intersection of Beach and Washington streets, of said city."

It is contended by appellee that the provision as to conducting water in pipes is a different subject from that in regard to transmitting electricity, and *Dempsey v. City of Burlington*, 66 Iowa, 688, is relied upon. In that case the ordinance provided for the vacation of an alley, and released the interest of the city therein to one Higbee. The court, in referring to section 489, says: "But we think it does not forbid the enactment in a single ordinance of all the legislation which may be necessary for the accomplishment of a single object. The different provisions necessary for the accomplishment of the object intended in that case would all relate necessarily to the same subject." The single object of this ordinance is to supply electricity for the use of the city and its inhabitants, and the privilege granted as to water is merely an incident thereto, and is therefore

part of the object intended, namely, the supplying of electricity. If the privilege was for conducting water throughout the city, and supplying it to others, it might be regarded as a different subject; but the authority is simply to convey water to the electric light plant. We think this objection to the ordinance is not well founded.

III. We premise the inquiry as to the power of the city to pass this ordinance without a vote, by refer- ring to the well-established rule that munic- ipal corporations have only such powers as are expressly given or implied in and necessary to the exercise of those expressly given. The ordinance in question was passed since the taking effect of section 471 of the Code, as amended by chapter 11 of Acts of the Twenty-second General Assembly. That section, together with the four following sections, as they formerly stood, relate to the power of cities and towns to erect or authorize the erection of waterworks; and in section 471 it was provided as now: "But no such works shall be erected or authorized until a majority of the voters of the city or town, at a general or special election, by vote approve the same." By the amendment the following was inserted in section 471, after the word "works," in the first line: "Or to establish and maintain gas works or electric light plants, with all the necessary poles, works, burners, and other requisites of said gas works or electric light plants." The amendment also provided that the other four sections "shall be held to apply to the establishment and maintenance of gas works and electric light plants as fully as they do to the erection of waterworks." Section 471, as amended, is as follows:

"They shall have power to erect waterworks, or to establish and maintain gas works, or electric light plants, with all the necessary poles, wires, burners, and

3. ——: ——; electric light works: approval at election necessary.

other requisites of said gas works or electric light plants, or to authorize the erection of the same; but no such works shall be erected or authorized until a majority of the voters of the city or town, at a general or special election, by vote, approve the same." Section 464 confers power "to light streets and alleys," etc.

The appellee contends that, under this authority, the city had power to pass the ordinance without a vote; that it and the contracts are simply an arrangement for lighting streets, and not within the provisions or restrictions of section 471. That a city may provide for lighting its streets under the authority of section 464, when the erection or authorizing the erection of gas works or electric light plants is not involved, may be true; but this we do not determine, as the ordinance clearly authorizes the erection of an electric light plant, and therefore comes under section 471. It grants a franchise to occupy the streets and alleys with poles and wires, for the purpose of distributing electricity to consumers, all of which enters into and goes to make up the electric light plant. It is very different from an arrangement for lighting streets, which does not require works, nor such occupation of the streets. This ordinance goes quite beyond a mere contract or arrangement for lighting streets. It confers on Mr. Hunter, his successor and assigns, for a long term of years, a franchise and easement in the streets and alleys of the town. It contemplates more than the lighting of the streets. It is for the distribution of electricity to private consumers, and quite identical with the franchise usually granted to gas and other light companies. We are of the opinion that the ordinance is within the provisions of section 471 as to electric light plants.

IV. It is further contended, in support of the demurrer, that the provision of section 471 requiring an

approval by vote does not apply to electric light plants; that the words, "but no such works shall be erected or authorized," etc., only relate to water and gas works, as they alone are previously designated as "works," while the other is designated as "plant." It is argued that, if electric light plants were intended to be brought under the restriction of power, the words, "or plants," would have followed the words, "but no such works." There is not exact harmony in the wording of the section as it now stands—a result, no doubt, of the manner in which it was amended,—yet we find no difficulty in arriving at a satisfactory conclusion as to the legislative intent. Without the restrictions of section 471, the authorities of municipal corporations would have the power to erect or authorize water works, gas works, and electric light plants, without restriction, and without regard to the wish of the voters. The evident purpose of section 471 is to restrict the exercise of this power. It is not questioned but that the power of municipal corporations to erect or authorize water or gas works is subject to approval by majority vote. There is certainly no reason why they should not be so restricted as to erecting or authorizing the erection of electric light plants for supplying the city. It is true, the section would have been more explicit and plain if by the amendment the words, "or plants," had been inserted after "works," in the restricting clause of the section, but we are in no doubt that the word "works," as here employed in the section as amended, includes all previously mentioned which come within its meaning; that electric light plants are works, and, when designed for supplying the city and inhabitants, can not be erected or authorized unless approved by a majority vote, as provided. It is said that many of the cities and towns of the state, construing this section differently, have authorized the erection of electric

light plants without the approval of a vote. This is another evidence of the disposition of municipal authorities to go beyond the powers granted to them, and of the necessity for restrictive legislation.

We are of the opinion that the ordinance in question was intended to authorize the erection of an electric light plant for the purpose of supplying the city of Belle Plaine with electricity for lighting and power purposes, and that the city did not have power to enact that ordinance until a majority of the voters of the city, at an election, by vote approved the same, and, therefore, that the demurrer should have been overruled. REVERSED.

UPON REHEARING.

TUESDAY, OCTOBER 11, 1892.

ROBINSON, C. J.—A rehearing of this cause was ordered on the petition of the appellees, in order that the questions involved might be re-examined. We have been favored on the rehearing with additional arguments prepared with much ability, and have again considered the questions presented with the care which their importance demands. The new arguments are in the nature of rearguments of some of the questions considered and determined on the first submission. We do not find it necessary to review them at length, for the reason that our re-examination of the case satisfies us that the conclusions announced in the original opinion are correct, and we think they dispose of all material questions involved. We adhere to that opinion.

The judgment of the district court is REVERSED.

KINNE, J., took no part in the decision of the case.