CITY OF KEOKUK v. FORT WAYNE ELECTRIC COMPANY, Appellant.

Electric Light Franchise: TO BE SUBMITTED TO VOTE. Ordinances granting a franchise to occupy streets with poles and wires for the distribution of electric light and power must be submitted to a vote of the people, under Code, 471. *Hanson v. Hunter*, 86 Iowa, 722, 53 N. W. Rep. 84, followed. KINNE, J., *dissenting*. (4)

SETTING UP INVALIDITY OF CONTRACT: ESTOPPEL. A company having forfeited a deposit made to be used as liquidated damages if it broke its contract to furnish the city with a specified number of lights, and having but partly complied with the contract, is not estopped from setting up the invalidity of the contract when sued for its breach, where the city has made no payments in excess of services actually rendered. (3)

*Appeal from Lee District Court.*—HON. JAMES D. SMYTHE, Judge.

TUESDAY, JANUARY 30, 1894.

ACTION at law to recover damages of the defendant for failure to comply with an alleged contract to furnish and maintain, in the streets of the plaintiff city, one hundred and twenty-five arc electric lights. A jury was waived, and a trial was had before the court. A judgment was rendered against the defendant for three thousand, nine hundred and ninety-nine dollars and ninety-nine cents, and it appeals.—*Reversed.*

*W. J. Roberts* and *Charles H. Worden* for appellant.

*D. F. Miller, Sr.,* City Attorney, and *A. J. McCrary* for appellee.

ROTHROCK, J.—I. The appellee presented a motion to strike from the files an amendment to the assignment of errors. It is unnecessary to determine the question presented by the motion, for the reason that we do not find it essential to consider the amendment of the assignment of errors. In our opinion, the rights of the parties may be determined upon the errors originally assigned, and of the sufficiency of which there is no question. .

II. Another motion of appellee was submitted with the case, in which it is sought to strike out the evidence from the abstract because it was not preserved by a bill of exceptions. This motion is not well taken. An examination of the whole record shows that it is not defective in the respect claimed. We need not discuss the question.

III. A statement of facts appears to be necessary to a clear presentation of the grounds upon which we base our decision in the case. It appears that at some time prior to the year 1890 there was an electric light company in the city of Keokuk known as the Badger Electric-Light Company. Its plant was sold at sheriff's sale on the twelfth day of December, 1890. There was another Keokuk company known as the Gate City Electric-Light Company. It had leased the property of the Badger Company, and on the seventeenth day of October, 1890, a written contract was entered into between the city and the Gate City Company by which the said company bound itself to furnish to the city one hundred and twenty-five arc lights for the period of five years. Sixty of said lights were to be put in oper-

ation within forty-five days, and the remainder within ninety days, from the date of the contract. The city was bound by said contract to pay to the Gate City Company the sum of sixty dollars a year for each of the said lights so erected and maintained. When this contract was made, the Gate City Company had on deposit with the city the sum of five hundred dollars, which was held by the city as security for the performance of the contract by the said company; and it was part of the contract that the deposit should be forfeited to the city if the contractor should fail to furnish the lights at the time contracted for, and that said sum should be regarded by the parties as liquidated damages. The Gate City Company did not furnish all of the lights by the stipulated time, and on the nineteenth of February, 1891, the city council adopted a resolution which was in these words: "By Alderman Buck: Resolved, that there be, and there is hereby, granted to the Gate City Electric Company sixty (60) days' additional time from February 20, 1891, in which to put in operation the additional sixty lights of the one hundred and twenty-five arc lights provided for by its contract with the city of Keokuk: provided, however, that the Gate City Electric Company shall waive any claim to the five hundred dollars deposited by it with the clerk of the council at the time of depositing its bid with the clerk of the council, and agree that it may be retained by the city of Keokuk as liquidated damages, as provided by its contract with the city, for failure to put in the one hundred and twenty-five arc lights as provided by said contract; and provided, further, that if said additional lights are not erected and in operation within the said sixty days, that it will work a forfeiture of the rights of said company under its contract with the city; and the city attorney is hereby instructed to serve notice as provided by the contract." It appears that the Fort Wayne Electric Company, appellant herein, is

a foreign corporation located at Fort Wayne, in the state of Indiana, and the said company or its officers were interested in the said Keokuk companies as stockholders. On the seventeenth day of January, 1891, a memorandum of a contract was made between the Fort Wayne Company by R. T. McDonald, its treasurer, and the stockholders in the said other companies, by which the Fort Wayne Company took an assignment of the sheriff's certificate of sale of the Badger Electric-Light Company, and of its lease to the Gate City Company, and of the stock held by the Keokuk stockholders in the last named company. The time for completing the erection of the lights, as extended by the resolution above set out, expired on the twentieth day of April, 1891. This suit was brought on the twenty-fifth day of March, 1891. On the third day of April of that year, the city made a contract with one J. C. Hubinger to furnish one hundred and twenty-five arc lights, and agreed to pay therefor the sum of sixty-eight dollars a year for each of said lights. One ground upon which recovery was sought was that the Fort Wayne Company, as the assignee of the Gate City Company, made a verbal contract with the city to perform the contract made by the city with the Gate City Company. A large mass of oral evidence was introduced on the trial in the court below, the object of which was to prove the alleged verbal contract. We need not discuss the questions raised upon that issue, for we believe that the case must be determined upon other grounds, which we will proceed now to consider.

IV. It is a conceded fact that no vote of the people of the city of Keokuk was at any time taken upon the question of the establishment of an electric light plant by the Gate City Company nor by the Badger Company. It was held by this court, in the case of *Hanson v. Hunter*, 86 Iowa, 722, 48 N. W. Rep. 1005, that an ordinance of a city granting a franchise to erect an

electric light plant in the city, and to occupy streets with poles and wires, was void, because it was not authorized by a vote of the people.   A petition for rehearing was allowed in that case, and after most able and exhaustive arguments of counsel, and a full reconsideration of the question, the petition for rehearing was overruled, and the original opinion adhered to. . 53 N. W. Rep. 84.   Counsel for appellant contends that the decision in *Hanson's case* should be overruled. We discover no grounds upon which such a proposition ought to be entertained.   It is claimed, however, with great confidence, that the cited case is not applicable to the facts in the case at bar.   The proposition of counsel is that the contract in the case at bar is an executed contract, and that it would be unjust to allow the defendant to retain the fruits of the contract, and at the same time to claim that the contract is void.   But the plaintiff made no payment for the electric lights in excess of the service rendered; it incurred no liability in advance for the lights which were furnished.   The ground upon which it claims damages is that it has paid and will be compelled to pay eight dollars per light per annum more than it would have been required to pay defendant if it had erected and maintained one hundred and twenty-five lights for five years; and the court adopted that basis in ascertaining the measure of damages.   It will be seen that it is a mistake to designate the contract as executed.   An executed contract is "one which has been fulfilled,—one which has been wholly performed; as, when A. and B. agree to exchange horses, and do so immediately" (2 Bl. Comm. 443); "one in which both parties have done all they are required to do" (1 Bouv. Law Dict. [15 Ed.], page 622).   This is the strict technical definition of an executed contract.   An executory contract is "one in which some future act is to be done; as, where an agreement is made to build a house in six months, or to do any act

at a future day." *Id.* It is perhaps not an important question as to what the contract in this case may be named. Counsel for appellee, in support of the claim that the defendant can not avail itself of the invalidity of the contract, cites, Angell & Ames on Corporations, 240, and calls special attention to the following language: "The courts of New York have gone very far in enforcing contracts made by corporations, although they are not justified by their charters; and the law in that state now appears to be that such a contract, which is purely executory on both sides, and where no wrong will be done if the parties are left in their previous situation, should not be enforced, but that the executed dealings of corporations must be allowed to stand for and against both parties, when the plainest rules of good faith so require." The following extract from Sedgwick on Statutory and Constitutional Law, 73, is also set out in argument: "It must be further borne in mind that the invalidity of contracts made in violation of statutes is subject to the equitable exceptions that although a corporation, in making a contract, acts in disagreement with its charter, where it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement can not be permitted, in an action founded on it, to question its validity. It would be in the highest degree inequitable and unjust to permit the defendant to repudiate a contract, the fruits of which he retains. And the principle of this exception has been extended to other cases. So, a person who has borrowed money of a savings institution upon his promissory note, secured by a pledge of bank stock, is not entitled to an injunction to prevent the prosecution of the note, upon the ground that the savings bank was prohibited by its charter from making loans of that description." It appears to us to be

quite clear that the facts in this case do not bring it within the rule announced in these extracts from the learned authors. It is true, there are a large number of cases to be found supporting the rule. It is founded on the plainest principles of justice. No court has ever decided that a corporation may borrow money, and keep it because it was forbidden by its charter to borrow money. If the plaintiff in this case had paid the defendant in advance for the electric light service, and had brought an action for damages, the case would be within the rule laid down in the text-books above cited. No one would contend that the defendant could avail itself of the invalidity of the contract to enable it to retain that which it never earned, and thus violate the plainest rules of good faith. The evidence in this case tends to show that it was worth more than sixty dollars per annum to maintain arc lights in the city of Keokuk. The defendant declined to continue furnishing lights at that sum. The city made a contract with Hubinger for one hundred and twenty-five lights at sixty-eight dollars a year, and the case was tried upon the theory that they were worth that sum. The plaintiff has the five hundred dollar deposit, and has not paid anything in excess of sixty dollars for each light furnished. It made its contract with Hubinger, and brought this suit before the time expired in which defendant was to furnish the additional lights. We think it is in no position to demand any further damages than those already received. The demand that the defendant should have continued to furnish lights at a loss for five years, and be liable at any time to have its compensation for the lights cut off at the suit of any taxpayer, as was done in *Hanson v. Hunter, supra,* is not warranted by any equitable consideration which we are able to discover. The cases cited by counsel are, as we have said, founded on entirely different facts, and involve a principle in no

wise applicable to the facts of this case. The judgment of the district court is REVERSED.

KINNE, J.—I dissent from the conclusion reached by the majority of the court, nor can I agree to the doctrine announced in *Hanson v. Hunter*, 48 N. W. Rep. (Iowa) 1005, and 53 N. W. Rep. 84. The judgment below should be AFFIRMED.