FIRST NATIONAL BANK OF SHENANDOAH, IOWA, Appellee, v. ADDIE HALL, Appellant.

**TRIAL:** Directed Verdict—Test to Determine—Allowable Inferences.
1   When the court is met by motion to direct a verdict it should carry to the aid of the evidence every permissible inference in support of the issues. In instant case, motion improperly sustained.

PRINCIPLE APPLIED: Action on note. Plaintiff's evidence showed in the most positive manner the full, free, intelligent and undoubted execution and delivery of the note. Defendant's evidence showed that her eyesight was very poor and showed in an equally positive manner that defendant never saw the note, never signed it and never had any talk about signing it; or that if defendant did sign it, she was tricked into so doing through the fraud of her attorney, while signing a petition for divorce. *Held,* (a) the jury might have found that the minds of the parties never met—no contract was ever made; and (b) that she had a right to rely implicitly on what her attorney told her and was

excusable in not asking her sons to read the instrument to her. *Held*, motion for a directed verdict was improperly sustained.

*Appeal from Page District Court.*—HON. THOMAS ARTHUR, Judge.

TUESDAY, FEBRUARY 23, 1915.

ACTION on a promissory note resulted in a directed verdict for the plaintiff on which judgment was entered. The defendant appeals.—*Reversed.*

*Seerley & Clark* and *Parslow & Peters*, for appellant.

*T. S. Stevens*, for appellee.

LADD, J.—This is an action on a promissory note for $750, alleged to have been executed by the defendant December 31, 1910, to Earl R. Ferguson and C. R. Barnes, payable sixty days after date and endorsed by them to plaintiff for value before maturity. A credit of $250 was admitted and the evidence that plaintiff took the note as collateral security for an existing indebtedness was undisputed. The defenses interposed were that defendant did not sign the note and that, if she did, she did so supposing she was signing a petition for divorce and that the signature was obtained by fraud.

1. TRIAL: directed verdict: test to determine: allowable inferences.

After the evidence had been introduced, a verdict for plaintiff was, on its motion, directed and this ruling is the only error assigned for review.

Counsel for appellant concede that defendant may have signed the note but contend that the issue of whether she was induced so to do by fraud should have gone to the jury. The payees were partners and as such, engaged in the practice of law at Shenandoah. Robert Hall, at the instance of defendant, his mother, consulted Ferguson about obtaining a divorce and arranged for him to call on her at her home in the country. Ferguson prepared a petition therefor and a note to

himself and Barnes for $750 and with his brother, who was a notary public, repaired to defendant's home. According to Ferguson's testimony, somewhat corroborated by that of his brother, he read the petition to defendant, correcting it where necessary, and she then signed the affidavit attached and made oath thereto before his brother; that he then read the note over to her and she signed it and gave it to him; that the amount had been agreed upon between him and Robert, "that the fee was to be contingent on success and that this was explained to her; and that whatever the husband was required in the decree to pay would be endorsed on the note. On the other hand, the defendant testified that nothing was said about signing any paper other than the petition, that there was no talk concerning a note or of signing a note; that she could not see well enough to tell whether the signature to the note in suit was hers, but upon examining it with a magnifying glass, thought it was her signature; that she was in feeble health and her eyesight very poor so that she could not see well enough to read at the time but relied on what Ferguson told her the paper was and wrote her name where he directed; that Ferguson said he wanted $750 for his services and the expenses incident to the suit and on her suggestion that this was pretty high, remarked that it made no difference to her as it would come out of her husband; that she signed no paper other than the petition and no paper other than the petition was presented to her. Robert Hall denied that anything was said about the fee to be charged when he consulted Ferguson; corroborated his mother's testimony concerning what was said about fees at her home; testified that, though in the room, he did not hear Ferguson read the note to his mother; that he did not see a note there and that there was no conversation about a note and that his mother could not read, owing to ill health and poor eyes. To avoid a continuance, plaintiff admitted that George Hall, if present, would testify that he was in the room when the note is said to have been signed; that a note was not then signed; that "no

mention was made or anything said of any note being given'';
that Ferguson stated that no claim would be made against
defendant for any fees in connection with the divorce suit and
that all he would expect would be those allowed by the dis-
trict court from the property of the husband.  This is the
substance of the evidence and in passing on its sufficiency to
carry the issue of fraud in the inception of the note to the
jury, it, with every permissible inference in support of the
charge, must be taken into consideration.  Certainly the jury
might have found that the note was not exhibited to the de-
fendant, that she did not see it to know what it was; that it
was not referred to in any conversation and if she signed it,
this was not done knowingly or intentionally.  Had she, with-
out fault on her part, signed the note under the misappre-
hension, induced by the payee, that it was an instrument of
another character, she would not have been bound thereby.
*Green v. Wilkie*, 98 Iowa 74; *Eldorado Jewelry Co. v. Dar-
nell*, 135 Iowa 555.

This is for the reason that there would not have been
an intelligent assent to the terms of the contract—no meeting
of the minds of the parties thereto.  This is quite as true
where a person has in some manner, whether from indirection
or otherwise, signed a promissory note when not conscious
of so doing.  No man can well be made a party to a contract
without his own consent.  The mind must act in the execution
of the particular agreement and it must be executed as and
for what it purports to be.  If the mind is drawn away from
it by fraud or otherwise and the party is induced to sign it
through some scheme or accident, as and for another instru-
ment than that which it purports to be or was to do, then
there is no consent and no delivery made or authorized to be
made of the papers so signed.

In *Foster v. MacKinnon*, 4 C. P. 704, Boyles, J., said:
''The case presented by the defendant is, that he never made
the contract declared on; that he never saw the face of the
bill; that the purport of the contract was fraudulently mis-

described to him; that when he signed one thing, he was told and believed he was signing another and an entirely different thing; and that his mind never went with his act. . . . It seems plain on principle and on authority, that if a blind man, or a man who cannot read, or for some reason (not implying negligence) forbears to read, has a written contract falsely read over to him, the reader misreading to such a degree that the written contract is of a nature altogether different from the contract pretended to be read from the paper, which the blind or illiterate man afterwards signs, then, at least if there be no negligence, the signature so obtained is of no force; and it is invalid, not merely on the ground of fraud, where fraud exists, but on the ground that the mind of the signer did not accompany the signature; in other words, that he never intended to sign, and therefore, in contemplation of law, never did sign the contract to which his name is appended." See also *Gibbs v. Linabury*, 22 Mich. 479, 7 Am. R. 675.

Most of the cases are where the maker has been deceived into signing a contract or note under the supposition that it was a different instrument; but if signed unintentionally,—that is, when unconscious of signing,—the paper thus signed is quite as vulnerable to the objection that it is not the contract of the signer as though this were induced by deceit. Thus in *Kagel v. Totten*, 59 Md. 447, the defendant swore that he signed duplicate agency contract but did not sign a promissory note; and though his name attached to the note sued on was genuine, the court, since he was an illiterate man, held the issue as to his liability should have been submitted to the jury. In *Puffer v. Smith*, 57 Ill. 527, the defendant signed an agency contract for the sale of a cultivator and seeder and was later sued on a note bearing his signature, though he swore that he did not sign a note, and the court upheld a judgment in his favor in an action thereon, saying: "The reasonable inference is that the note sued on was the result of deception and trick practiced on the defendant in

error." It seems very clear that if the maker never intended to sign the instrument, whether it be a contract or promissory note, the signature cannot be regarded as his act in contemplation of law.

The difficulty in such a case is to exculpate himself from the charge of negligence in the signing of the note which is essential to defeat a negotiable instrument in the hands of an innocent purchaser for value. *Douglas v. Matting,* 29 Iowa 498; *Williams v. Stoll,* 79 Ind. 80, 41 Am. R. 604.

It is well settled that if a person who can read signs an instrument without reading, or satisfactory excuse for not doing so, this is such neglect as will preclude him from asserting that he was misled as to the character of the instrument in executing it. *Wright v. Flynn,* 33 Iowa 159; *Chapman v. Rose,* 56 N. Y. 137, 15 Am. Rep. 401; *Ort v. Fowler,* 31 Kans. 478, 47 Am. R. 501.

And even though a person may not be able to read, if others are present who can read, and upon whom he may call for assistance, and he signs without invoking their assistance, he is precluded from interposing a defense on the ground of fraud. *Green v. Wilkie,* 98 Iowa 74; *Shores-Mueller Co. v. Lonning,* 159 Iowa 95, and cases cited. *Brown v. Feldwart,* 80 Pac. (Ore.) 414.

Reverting to the evidence, it is to be said that the defendant was a woman little accustomed to business, in feeble health, with eyesight so defective that she could not read. Transacting the business with her was an attorney whom she had employed through her son the day previous. Contrary to the suggestion of appellee, the relation of attorney and client had been established; at least the jury might have so found. Ferguson owed her absolute good faith throughout the transaction and although two sons who could read were present, she cannot be held negligent, as a matter of law, if she relied on Ferguson without invoking their assistance. That issue was for the jury. The jury might have found that

the note was not mentioned and therefore she would not be put upon inquiry as to signing such an instrument.

If her testimony and that of her sons were to be relied upon by the jury, it might have found that through some trick or deception, or without these, her name was attached unconsciously to the note. It was not necessary in order to carry the issues to the jury that precisely how this happened, if at all, should have been explained. It is enough that without knowing or intending to sign the note, her name was attached thereto, providing this was without fault on her part, for though fraud is alleged, no more was necessary to be proven than sufficient to defeat recovery, and this issue at least should have been submitted to the jury. It follows that the court erred in directing a verdict for the plaintiff.— *Reversed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.