PHILIP M. CLOUD, Guardian, Appellant, v. A. B. BURNETT et al., Appellees.

**CONTRACTS: Mutuality—Evidence.** Evidence relative to an exchange
1  of lands reviewed, and held to show that there was no meeting of the minds, and therefore no contract.

**CONTRACTS: Executed (?) or Executory (?)** It may not be said
2  that a contract has been executed when the testimony demonstrates that no contract ever existed, because of the failure of the minds of the parties to meet.

**PLEADING: Amendments—Conforming Pleading to Proof.** One who
3  pleads fraud in the inception of a contract and prays for rescission on that ground may, at any proper time, and in order to conform the pleadings to the proof, amend by pleading that no contract ever existed, because of the failure of the minds of the parties to meet on the terms of the contract.

**BILLS AND NOTES: Consideration—Failure of Consideration—When**
4  **Plea Unallowable.** The maker of a promissory note may not plead failure of consideration when his own fraud brought about such failure.

Headnote 1: 23 C. J. p. 232. Headnote 2: 23 C. J. p. 187. Headnote 3: 31 Cyc. p. 451. Headnote 4: 8 C. J. p. 724.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

DECEMBER 15, 1925.

REHEARING DENIED MARCH 19, 1926.

SUIT for cancellation of a contract of exchange between W. N. Treichler and Walter Gater. As a part of the purported contract, the defendant Burnett got a conveyance from Gater

of Gater's land in Canada. Treichler & Treichler are made defendants because they appear to have been interested in the land which W. N. Treichler was to convey to Gater. The American Trust & Savings Bank is made a party because the papers pertaining to the carrying out of the deal were deposited with it. After the supposed contract was made, the plaintiff, Cloud, was appointed guardian for Gater, and as such, brings the suit. The court denied relief as to the defendants Treichler. The court found that Burnett overreached Gater in the transaction, and decreed a reconveyance by Burnett to Gater of the Canadian land, and also rendered judgment against Burnett for $300.62, which Burnett had received from Gater for taxes on the Canadian land. The court also gave the defendants Treichler judgment against Burnett on Burnett's promissory note given to Treichler, as a part of the transaction, for $360. Plaintiff and Burnett appeal.—*Reversed on plaintiff's appeal; affirmed on Burnett's cross-appeal.*

*A. M. Cloud, George S. Banta,* and *Trewin, Simmons & Trewin,* for appellant.

*C. J. Haas,* for appellee and cross-appellant, A. B. Burnett.

*Treichler & Treichler* and *Johnson, Donnelly & Lynch,* for appellees W. N. Treichler and Treichler & Treichler.

MORLING, J.—Gater employed Streeter to sell Gater's Canadian land. Streeter took up with Burnett the matter of finding some Iowa land to trade for the Canada land. Burnett approached Treichler, who owned a piece of cheap

1. CONTRACTS: mutuality: evidence.

Iowa land. Treichler refused to take any property in trade, but gave Burnett a price of $13,000 on his Iowa land. Burnett says that that price carried with it a commission to him. Treichler and his son deny that anything was said about commission. Burnett and Streeter took Gater to see the Iowa land, and grossly misrepresented it, and priced it at $28,000 on a trade for the Canada land at $15 an acre. They then drew a contract, dated June 8, 1922, between Treichler and Gater, by which Treichler agreed to sell the Iowa land to Gater, and Gater agreed to sell to Treichler the

Canadian land, and by which Gater agreed to pay $1,000 at the date of the contract, and to give his note for $4,640 and mortgage for $7,000 on the Iowa land, making $12,640, besides the Canada land. No prices were stated in the contract for either the Iowa or the Canada land. Gater's payments lacked $360 of the price Treichler gave to Burnett. Gater signed this contract, and Burnett presented it to Treichler. Treichler refused to consider the Canadian land. Burnett told Treichler that he would see what could be done about his taking over the Canadian land. Later, Burnett again saw Treichler, and said that he had arranged with Gater that he, Burnett, would take the Canadian land, and would pay the difference, and make up the $13,000, and would pay the taxes on the Iowa land for 1922. Treichler proposed drawing up a new contract. Treichler says that Burnett thought it would be better to write some addition to the contract, rather than ask Mr. Gater to sign another contract, "and he asked whether I couldn't modify this one by writing an additional qualification and submitting it to him for his approval; and at his suggestion, the addendum was drafted, with the belief on my part, as it is expressed in the addendum, that Mr. Burnett was acting for Mr. Gater, and according to the statements that Mr. Burnett made to me, that the payments were to be made for Mr. Gater in consideration that Mr. Burnett was to take the Canada land from Mr. Gater; on this it is clearly expressed in the addendum. I understood at that time that Burnett was taking the land from Gater; under what conditions I don't know * * * I understood that they made arrangement whereby Burnett was to take the Canada land, just as I expressed it in there, and I got that from Mr. Burnett; I assumed that he was to take it."

This addendum was drawn in triplicate, and it provided that Treichler "hereby agrees with said Walter Gater that the deed covering the Canada land referred to in the contract may be made to Albert B. Burnett as grantee, the said land going to him *as agent of the said Walter Gater in negotiating the purchase,* and to reimburse the said Albert B. Burnett for certain advancements to be made by said Albert B. Burnett for said *Walter Gater* as part of the purchase price for the Linn County land; provided, that the said Albert B. Burnett pays the taxes

due on the Linn County land on January 1, 1923." (The italic is ours.) This was signed by Treichler. Treichler gave Burnett a receipt:

"Received from A. B. Burnett one copy of triplicate article of agreement of sale of real estate and dated June 8, 1922, by and between W. N. Treichler and Walter Gater, the other two signed copies being given to said A. B. Burnett for purpose of submission to said Walter Gater for acceptance of certain conditions changed after his signature was attached. If said Gater does not approve contract in present form, said triplicate copies are to be returned to each of the parties for cancellation."

Burnett then took the copies of the agreements and addendum to Gater. Gater objected to the statement that Burnett was his agent and that advancements had been made by Burnett for him, and said that Burnett was not his agent. Burnett says:

"When he called my attention to that, I read it myself, and it said,—it read I was the agent of Walter Gater, which I positively knew I was not; and I drawed my pen through there and inserted Mr. Treichler's name. The changes were made by me in Mr. Gater's presence, as they appear in the so-called order or addendum at this time * * * I told Mr. Gater that his price on the farm was not sufficient to make the trade, and I had to put in a little money in order to do it, and I also had to pay the taxes on the Troy Mills farm for the year, and that, as my commission and for the money I had put in on it, Mr. Treichler was deeding me or having the land deeded direct to me. I told him that was my commission."

Burnett did draw his pen through the words italicized, "as agent of the said Walter Gater in negotiating the purchase," and "Walter Gater," and wrote over the name "Walter Gater," where it last appears, the name "W. N. Treichler," so that it would read, "to reimburse the said Albert B. Burnett" for advancements made by Burnett "for said W. N. Treichler as part of the purchase price," etc. Burnett was not Gater's agent, and Gater never agreed to pay him any commission. Burnett did claim to Gater that he was representing Treichler. Burnett says that he supposed he had authority from Treichler. Burnett did not make the change in the copy of the contract that he kept and gave to the bank, nor did he at any time change

the addendum on the copy of the contract retained by Treichler. When Burnett made the change in this addendum, Gater took it, and gave Burnett his note for $4,640, the note and mortgage for $7,000 on the Linn County land, and a check for $955, both payable to defendant bank. Gater also gave his note to Streeter for Streeter's commission, $960. Burnett told Treichler that it was all right, and that he had the papers—had the collateral. He did not tell Treichler that any change had been made or any alteration in any of the copies of the addendum, and Treichler did not know about this change until shortly before this suit was brought.

According to the testimony of W. E. Treichler, the son, when his father refused to take the Canada land and suggested drawing up a new contract:

"Mr. Burnett replied to that, if—well, 'Mr. Gater,' he says, 'Mr. Gater has already signed up this contract here,' and he says, 'I don't like to go back and ask him to sign another one,' and he says, 'If you can just write something and attach on there, and give him the authority to make the deed of the Canada land to me, why then,' he says, 'I can take that all back to him for his approval, and if he approves it, get the signature on the other notes and mortgages, and that will take care of the whole thing.' Well, we objected to that in a way, and father and I talked the matter over, and we decided on drawing up the addendum which is attached to the contract."

I. Was any contract consummated between Gater and Treichler? Burnett was not Gater's agent. If Treichler assumed that he was, he had no right to do so. It does not appear that Burnett expressly represented that he was agent for Gater. Treichler would have no right to rely upon Burnett's statements that he was Gater's agent, even if Burnett made such statements. More than that, the original contract gave Treichler notice that Gater understood that he was selling Treichler the Canadian land, and we think that the testimony of Treichler and his son shows that they knew that Burnett was not Gater's agent. They knew that Burnett did not want to ask Gater to sign another contract, and W. E. Treichler says that Burnett asked for something to "give him the authority to make the deed of the Canada land" to Burnett. The receipt which Treichler

gave is a receipt from Burnett, which reads that the copies were given to Burnett. It says that, if Gater does not approve, the copies are to be returned. The addendum which he drew recites that Burnett is to pay the taxes. A broker would have no authority to enter into any contract, and Burnett did not assume to have any such authority. Treichler relied upon Burnett, and was ostensibly dealing with Burnett. While Gater put three contracts signed by him in Burnett's hands, Treichler knew, and did not claim otherwise, that Burnett had no authority to add to or change that contract. Treichler then drew the addendum, and put two of the copies in Burnett's hands for the purpose of getting Gater's approval of them. Burnett represented to Gater that he was Treichler's agent, and Gater so believed. Gater did not sign either copy of the addendum. He merely accepted the one that was changed, and, believing that the change was authorized, signed the notes, the mortgage, and the check, and gave them to Burnett, to be deposited in escrow. Burnett had no authority from either party. He was intrusted by Treichler, just as much as by Gater, with the contracts. Gater believed that, through Burnett, Treichler was assenting to his terms. Treichler, at most, believed, through Burnett, that Gater was assenting to his terms. The minds of the parties never met. At most, each mistakenly believed that Burnett was acting for the other, with the authority of the other. The proposition presented to and accepted by one was not the proposition presented to or accepted by the other. Gater did not sign the addendum. Neither did he sign either of the contracts after the addendum was presented to him. Burnett had only two of them with him, and it does not appear that Gater saw more than the one, or that he knew that Burnett was not making the change on all of them. Burnett testified that he did not know how it came that he corrected only one and left two without correction, unless he just forgot it. Gater's attention was not called to the fact that the other two contracts or addenda were not changed. Burnett seems to have acted upon the assumption that it did not matter what was said about whom he was agent for, or whether he was agent for anybody, if he was to get the Canada land. Treichler says:

"The instructions I gave Burnett when I delivered him the

signed paper,—that, if they were not approved by Gater the very way I gave them, they were not to be binding,—that was about any writing, and I never changed those instructions, presuming that it was done in accordance with the agreement we had.''

Treichler made the acceptance of the addendum as written, a condition precedent to the existence of any contract. It was not accepted in fact. Gater did not inform defendant that it was accepted. He did not authorize Burnett to so inform defendant.

If it were not that Gater had intrusted the contract, as originally drawn, to Burnett, it could be said that Burnett was the agency adopted by Treichler to get and transmit Gater's approval or disapproval: *Lucas v. Western Union Tel. Co.,* 131 Iowa 669. The most that can be claimed is that both parties adopted the same agency, Burnett; both thought that an agreement had been reached, when none was reached. There was no meeting of the minds, and there was no contract. *Eldorado Jewelry Co. v. Darnell,* 135 Iowa 555; *First Nat. Bank v. Hall,* 169 Iowa 218.

II. Appellees contend that the contract has been executed. In the first place, the contract is not an executed one. *City of Keokuk v. Fort Wayne Elec. Co.,* 90 Iowa 67; 3 Words & Phrases 2562; 13 Corpus Juris 245. In the second place, it is quite illogical to speak of a contract as being executed if there never was any contract.

2. CONTRACTS: executed (?) or executory (?)

III. It is contended further that plaintiff did not plead want of mutuality. It was not pleaded in the original petition, but the facts came out during the trial, and, by amendment filed near its close, it was pleaded that the minds of the parties never met, and no contract was ever entered into. Defendant claims the benefit of the well established rule that, when one gives a reason for his conduct, he cannot, after suit is brought against him in reliance upon his expressed reason, ''mend his hold.'' The rule has no application. The suit was brought by Gater. He asked for rescission for fraud. This did not prevent him, on discovering the mistake and absence of agreement, from

3. PLEADING: amendments: conforming pleading to proof.

amending by alleging the nonexistence of contract. Gater had not chosen any ground, or expressed to defendant any ground of action upon which the defendant relied; and, of course, defendant brought no suit based on any such reliance.

IV. Upon the appeal of Burnett, it is only necessary to say that the evidence is abundant and conclusive, as found by the trial court, that the boundaries, character, and value of the Linn County land were misrepresented by Burnett and Streeter to Gater. Burnett procured from Gater the conveyance of the Canada land and the payment of $300.62 for taxes, on Burnett's misrepresentations that he had authority to make the change in the addendum and checks. He failed to make the changes on all the copies, he got the money and the land without right, and the judgment against him is right. Burnett pleads a failure of consideration for the $360 note upon which Treichler asks judgment against him. Burnett pleads that his liability is dependent on the validity of the transaction as a whole. If Burnett does not get the Canada land, the consideration has failed. The only question is whether he can take advantage of his own fraud to relieve himself from liability on the note. We hold that he cannot. *Williams v. Clark*, 18 *Ga. App.* 583 (90 S. E. 88) ; *Willis v. Robertson*, 121 Iowa 380, 384.

*4. BILLS AND NOTES: consideration: failure of consideration: when plea unallowable.*

V. Motion was made to strike the abstract. We think that much of the matter found in it is unnecessary, and that one third of the cost of the abstract should be taxed to the appellant. The costs on Burnett's appeals, as between Burnett and Treichler, will be taxed to Burnett. The rest of the costs will be taxed to W. N. Treichler and Treichler & Treichler.

On the cross-appeal of Burnett, the decree is—*Affirmed*.

On the appeal of plaintiff against the Treichlers, the decree is—*Reversed*.

FAVILLE, C. J., and STEVENS and ALBERT, JJ., concur.